Rory Martin CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–94–019–CR.

Court of Appeals of Texas,
Waco.

March 15, 1995.

Paul Guillotte, Jr., Gatesville, for appellant.

Sandy S. Gately, Dist. Atty., Lisa Deneyne Landrum, Asst. Dist. Atty., Gatesville, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Appellant Rory Martin Campbell was indicted on one count of burglary of a habitation in violation of TEX.PENAL CODE ANN. § 30.02 (Vernon 1989). He was charged with breaking and entering the home of Kathy and Phillip Mitchell and stealing from them several objects, including a refund check from the Internal Revenue Service made payable to both Kathy and Phillip that Campbell eventually cashed at a motorbank in Killeen. After he was convicted by a jury, the trial court sentenced him to fifty years of confinement in the Texas Department of Corrections—Institutional Division. Campbell brings six points of error on appeal: first, whether the trial court erred in permitting a prosecution witness to testify whose name was not timely provided to the defense; second, whether the prosecution's belated disclosure to the defense of a witness it intended to call constituted reversible error; third, whether reversible error resulted from the prosecution improperly referring to Campbell's failure to testify; fourth, whether the evidence was legally sufficient to support his conviction; and finally, in his fifth and sixth points, whether his indictment and his sentence are consistent. We affirm the judgment as reformed.

### I. WHETHER THE STATE IMPROPERLY COMMENTED ON CAMPBELL'S FAILURE TO TESTIFY

In his third point, which we will address first, Campbell argues reversible error re-

sulted when the prosecution on three different occasions improperly commented on his failure to testify. All three of the contested statements were made during the state's closing argument at the end of the guilt-innocence phase of the trial. They are:

1. How do we know he went in? Because he's in possession of the check and all the other property. How did he get it?

2. He is in unexplained possession of recently stolen property. We never heard anybody tell us how this got into his possession, but he had it right after the offense.

3. Everything puts this man in possession of this check. Explained? Yes, it's explained. He hadn't explained it, but we'll explain it. It was taken, taken from a home.

Campbell's counsel failed to object to any of the statements. Notwithstanding his failure to object, he argues his complaints against these statements have not been waived because they each constitute fundamental error. We will address each of the three statements to determine; first, if the statement was improper; second, if improper, whether the error was fundamental; and third, if fundamental, whether the error was reversible.

### 1. WHETHER THE COMMENTS WERE IMPROPER

■ It is a well-known, accepted, basic, and fundamental law in this state that the failure of an accused to testify may not be the subject of comment by the prosecution. *Montoya v. State,* 744 S.W.2d 15, 34 (Tex. Crim.App.1987) (on rehearing), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). Such comment is in violation of the privilege against self-incrimination contained in Article I, § 10, of the Texas Constitution and the Fifth Amendment to the United States Constitution made applicable to the states by the Fourteenth Amendment. *Id.* at 34; *Griffin v. California,* 380 U.S. 609, 611, 85 S.Ct. 1229, 1231, 14 L.Ed.2d 106 (1965); *Lopez v. State,* 793 S.W.2d 738, 741 (Tex. App.—Austin 1990) (Onion, J., writing for the majority), *pet. dism'd, improvidently granted,* 810 S.W.2d 401 (Tex.Crim.App.1991).

Comments by the prosecution referring to a defendant's failure to testify also offend the provisions of TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979), a mandatory statute, which provides:

Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.

■ The test to be applied to determine whether there has been a violation of article 38.08 by a prosecuting attorney is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the accused's failure to testify. *Allen v. State,* 693 S.W.2d 380, 385 (Tex. Crim.App.1984) (on rehearing). It is not sufficient that the language might be construed as an implied or indirect allusion to his failure to testify. *Montoya,* 744 S.W.2d at 35. In applying this standard, the facts and circumstances of each case must be analyzed to determine whether the language used was improper. *Id.*

### A. THE FIRST COMMENT

■ The first statement was made when the prosecution responded to the defense's statements at closing that the state had failed to carry its burden of proving that Campbell intentionally entered the victims' home. The state responded in rebuttal by stating that the evidence showed Campbell was found to be in possession of several of the items stolen from the victims, namely, the I.R.S. refund check, a credit card, Kathy's social security card, and her driver's license.

■ There are four permissible areas of jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to arguments from the defense; and (4) pleas for law enforcement. *Willis v. State,* 785 S.W.2d 378, 384 (Tex. Crim.App.1989), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). The prosecution's first statement was a reason-

able deduction from the evidence that Campbell's recent possession of stolen property strongly indicated that he was the person who burglarized the victims' home. *See Cantu v. State,* 842 S.W.2d 667, 690 (Tex.Crim.App.1992) (Counsel is generally afforded wide latitude in drawing inferences from the record, as long as such inferences are reasonable and offered in good faith), *cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); *see also Williams v. State,* 621 S.W.2d 613, 614 (Tex.Crim.App. [Panel Op.] 1981) (Recent unexplained possession of stolen property taken in a burglary is strong evidence to establish the defendant's guilt of the offense), *cert. denied,* 456 U.S. 908, 102 S.Ct. 1755, 72 L.Ed.2d 165 (1982).

### B. THE SECOND COMMENT

■ If a prosecution's remark called the jury's attention to the absence of evidence that only the testimony from the appellant could supply, error results. *Montoya,* 744 S.W.2d at 35–36. The prosecution's comment in the instant case, however, was not necessarily a reference to a point of evidence that only Campbell could have provided. When the prosecution's comment is ambiguous with one interpretation being an improper reference to the defendant's failure to testify and the other interpretation is that the statement was proper, it is permissible to find the jury only understood the proper reference. *Gardner v. State,* 730 S.W.2d 675, 700 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Other witnesses could have been called to explain how Campbell could have been found to be in possession of the victim's I.R.S. check, credit card, and driver's license. *Swallow v. State,* 829 S.W.2d 223, 225 (Tex. Crim.App.1992) (Language that can reasonably be construed to refer to a failure to present evidence other than from the defendant's own testimony does not amount to a comment on the defendant's failure to testify). If he had only received the stolen property, he could have been expected to call witnesses who would have testified how he

received the property or where he might have found it. No defense witnesses were called at all. Accordingly, we find the prosecution's second statement was not improper.[1]

### C. THE THIRD COMMENT

■ The prosecutor's third statement was a direct reference to Campbell's failure to testify. Having concluded error was committed, we will now determine whether the error was fundamental.

### 2. WHETHER THE ERROR WAS FUNDAMENTAL

■ As a general rule, the failure to object to impermissible jury argument waives any error. TEX.R.APP.P. 52(a); *Romo v. State,* 631 S.W.2d 504, 505 (Tex.Crim.App. [Panel Op.] 1982). However, an exception to the general rule exists where the argument is manifestly improper, violates some mandatory statute, or injects some new fact harmful to the defendant's case. *Willis,* 785 S.W.2d at 385.

Confusion in the case law exists concerning the proper test to use in determining whether a prosecutor's improper comment on a defendant's failure to testify constitutes fundamental error. The Court of Criminal Appeals in *Montoya* and *Johnson v. State,* 611 S.W.2d 649 (Tex.Crim.App. [Panel Op.] 1981), has utilized an "instruction to disregard" test to determine whether the error is fundamental. The *Montoya* and *Johnson* courts held a comment by the prosecution on the defendant's failure to testify will constitute fundamental error unless an instruction to disregard could have cured the harm caused by the error. *Montoya,* 744 S.W.2d at 37; *Johnson,* 611 S.W.2d at 650. The *Montoya* court further stipulated that, in performing the "instruction to disregard" test, the outcome will greatly depend upon whether the prosecution's statement was a direct or indirect comment on the defendant's failure to testify. *Montoya,* 744 S.W.2d at 37. The harm from indirect comments, held the court, could frequently be cured by an instruction

---

1. Campbell argues in addition that the prosecution's first and second statements injected new facts harmful to his case. We disagree. The first

and second statements injected no new facts at all.

to disregard while direct comments normally could not be cured by an instruction to disregard.[2] *Id.*

The true usefulness of the "instruction to disregard" test has recently been brought into question. The Austin court of appeals in *Espinoza v. State*, 843 S.W.2d 729, 730–731 (Tex.App.—Austin 1992, pet. ref'd), declined to use the "instruction to disregard" test in determining whether a prosecutor's comment on a defendant's failure to testify amounted to fundamental error because, the court reasoned, almost any harm caused by a reference to a defendant's failure to testify will be cured if the instruction to disregard is sufficiently severe and attention-grabbing.[3] *Id.* at 731 (citing *Davis v. State*, 645 S.W.2d 817, 819 (Tex.Crim.App.1983) (Harm from an improper jury argument cured by a strong instruction to disregard))[4]. Taking a "bright line" approach, the court ruled that since the defense failed to object to the three contested comments, that the jury "heard no evidence that the defendant was [at the scene of the crime] because he was there", that the jury "heard no testimony that [the defendant's sexual intercourse with the victim] was consen[s]ual," and that "[t]here was no testimony, no evidence that it was not—that it was consen[s]ual", the appellate court was left with nothing to review. *Id.*[5]

On the other hand, at least two courts of appeals have indicated that a direct reference to a defendant's failure to testify will, per se, amount to fundamental error because an instruction to disregard could not possibly cure the harm caused by the comments. *See Brown v. State*, 814 S.W.2d 477, 479–480 (Tex.App.—Dallas 1991, pet. ref'd); *see also Gayle v. State*, 713 S.W.2d 425, 428 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (decided prior to adoption of the Rules of Appellate Procedure).

■ As we agree with the *Espinoza* court that the harm from even direct comments on the defendant's failure to testify could possibly be cured with a sufficiently severe and attention-grabbing instruction to disregard, we find the "instruction to disregard" test is of little beneficial value except, perhaps, in the *Montoya* or *Johnson* context where error was not properly preserved because the defense failed to request an instruction to disregard after having his objection sustained. We need not, however, adopt the Austin court's bright line approach because we find a direct comment on a defendant's failure to testify to constitute fundamental error for a different reason. Because such error violates the provisions of a mandatory statute, namely, TEX.CODE CRIM.PROC. ANN. art 38.08, fundamental error necessarily results. *See Willis*, 785 S.W.2d at 385; *see*

2. The Court of Criminal Appeals in *Willis v. State*, 785 S.W.2d 378, 384 (Tex.Crim.App.1989), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990), also utilized the instruction to disregard test in analyzing improper jury argument for fundamental error. Two statements were made by the prosecution in *Willis*; the court found one not to be improper and the other an "impermissible comment upon [the defendant's] nontestimonial behavior," not his failure to testify per se. *Id.* at 385 n. 8. In considering the harm from both comments, the *Willis* court held "the statements were not so manifestly improper, harmful, and unjust to warrant a reversal. An instruction to disregard could have cured the harm." *Id.* at 385. It is not clear whether the court in *Willis* found the comments not to be fundamental error or not to be reversible error or both.

3. The court in *Espinoza v. State*, 843 S.W.2d 729 (Tex.App.—Austin 1992, pet. ref'd), distinguished *Montoya v. State*, 744 S.W.2d 15 (Tex.Crim.App. 1987), and *Johnson v. State*, 611 S.W.2d 649 (Tex.Crim.App. [Panel Op.] 1981), on the ground that they both involved the defense's failure to

preserve his complaint because he neglected to request an instruction to disregard in between having his initial objection sustained and his motion for a new trial overruled.

4. The court in *Davis v. State*, 645 S.W.2d 817 (Tex.Crim.App.1983), however, dealt with an indirect comment on the defendant's failure to testify.

5. The *Espinoza* court did hold, in the alternative, that the comments made by the prosecution could have been cured by an instruction or instructions to disregard and, therefore, were not fundamental errors under the "instruction to disregard" test. *Espinoza*, 843 S.W.2d at 731.

We note that all three of the prosecutor's comments in *Espinoza* were either direct comments on the defendant's failure to testify or indirect comments calling for a denial of an assertion of fact or contradictory evidence that only the defendant was in a position to offer, meaning that the indirect comments would be treated in the same manner as a direct comment. *Id.* at 730.

*also Caballero v. State,* 587 S.W.2d 741 (Tex. Crim.App.1979) (A violation of Tex.Code Crim.Proc.Ann. art. 46.02, § 3(g) (Vernon 1979), prohibiting the admission at trial on the issue of guilt of evidence adduced at a competency hearing, is nonwaivable error).[6]

The prosecution's third statement was a direct violation of article 38.08. Accordingly, we find Campbell's complaint against the prosecution's third statement was not waived by his failure to object at trial.

### 3. Whether the Error was Reversible

■ Our inquiry, however, does not end here. If we conclude beyond a reasonable doubt that the error did not contribute to Campbell's conviction or punishment, the error will be deemed harmless. Tex.R.App.P. 81(b)(2); *Montoya,* 744 S.W.2d at 38.

■ In determining whether an improper prosecutorial argument is harmless, we must calculate as much as possible the probable impact of the error on the jury in light of the entire record. *Coble v. State,* 871 S.W.2d 192, 205 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994) (quoting *Orona v. State,* 791 S.W.2d 125, 130 (Tex.Crim.App.1990)). In conducting this harm analysis, we consider the nature and source of the error, the degree the prosecutor emphasized the erroneous jury argument, probable collateral implications, the weight a juror placed on the erroneous jury argument, and whether holding the improper jury argument harmless would encourage the state to repeat it. *Coble,* 871 S.W.2d at 206.[7] Additional factors that may be considered include the arguments of the parties, evidence in the record of the defendant's guilt, and whether the comment was made in bad faith. *Id.; see also Washington v. State,* 881 S.W.2d 187, 192 (Tex.App.—Houston [1st Dist.] 1994, no pet. h.).

Considering the weight a juror could have placed on the prosecutor's comment, we find the harm from the third comment was mitigated by the instructions the court read to the jury. Among the instructions read was the following:

> The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all evidence in the case. The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

*See Rose v. State,* 752 S.W.2d 529, 554 (Tex. Crim.App.1987) (on rehearing) (Court of Criminal Appeals generally presumes a jury follows the instructions given by the trial court).

Furthermore, the court before voir dire was conducted instructed the potential jurors that any of the comments made by the attorneys would not be considered evidence and, when the court read the instructions to the jury before they left to deliberate, the court instructed the jurors only to consider evidence that had actually been admitted in their deliberations. These instructions also mitigated the harm caused by the prosecution's comment. *See id.*

We also conclude the comment was not made in bad faith. The record indicates that Campbell's defense was that he was not the person who broke into the victims' home; indeed, he more or less concedes that he was in possession of stolen property. The prosecutor's comment does not appear to have been a deliberate attempt to highlight Campbell's failure to testify, but rather an at-

---

**6.** We note that an indirect comment violates article 38.08 when it necessarily calls for a denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Montoya,* 744 S.W.2d at 37.

**7.** While we did not consider whether an instruction to disregard was given in determining if the

error was fundamental, we note that the giving of an instruction to disregard may properly be considered in conducting a harmless error analysis. *See Waldo v. State,* 746 S.W.2d 750, 753 n. 4 (Tex.Crim.App.1988); *see also Willis,* 785 S.W.2d at 385.

tempted summation of his defense. *See Washington v. State,* 881 S.W.2d 187, 192 (Tex.App.—Houston [1st Dist.] 1994, no pet. h.). This fact further indicates the comment was not made with an emphasis upon Campbell's failure to testify. *Coble,* 871 S.W.2d at 206.

The following facts, uncontested by Campbell, were adduced by the prosecution at trial. The victims, Kathy and Phillip Mitchell, received a $1257.00 refund check from the I.R.S. prior to Memorial Day weekend in 1993. The check was placed on the victims' television set. Approximately five days after its receipt, on Tuesday, June 1, 1993, Kathy Mitchell noticed the check was missing. She also noted that one of the doors to her home appeared to have been damaged by someone who had pried it open because it would not close or lock properly. She immediately reported the missing check to the Copperas Cove Police Department. The following day, June 2, she also noticed her driver's license, her social security card, and a credit card were missing. She searched her residence for other objects that may have been missing but found none. On or after June 2, she telephoned a check-cashing business in Killeen and learned that someone had attempted to cash her I.R.S. check there earlier.

Vicki Gabrielli Van Horn, a clerk at the check-cashing business mentioned above, testified that the defendant, whom she identified in court, twice attempted to cash a tax refund check from the I.R.S., made out to both Kathy and Phillip Mitchell, within an approximate 45 minute period on the morning of June 2. She testified that when he first entered the check-cashing establishment he, while wearing a shirt with the name "Phillip" printed on it, indicated to her that Kathy Mitchell was his wife and he presented to her Kathy Mitchell's driver's license and social security number as identification. Van Horn informed Campbell that this identification was insufficient, whereupon Campbell left the store. Approximately 45 minutes later, he returned, identified himself as "Phillip Mitchell", and presented to Van Horn receipts from the sale of furniture with Phillip Mitchell's name on them in an attempt to provide further identification. When she again re-fused to cash the I.R.S. check, Campbell left the store. A video cassette tape was entered into evidence showing Campbell attempting to cash the I.R.S. check with Van Horn.

Sylvia Erikson, a coworker of Campbell at a dry cleaning store in Killeen for approximately one year, testified that on June 2, a payday, during her lunch break, she and Campbell drove to a motorbank in Killeen; that Campbell attempted to cash a check at this time; that she did not see the check Campbell was attempting to cash; that a representative from the bank informed Campbell that he would not be allowed to cash the check unless he provided the bank with a telephone number; that she gave this representative her telephone number when Campbell was asked to provide his own; and that after this telephone number was provided the check was cashed.

The I.R.S. check at issue was entered into evidence. Indicated on the check were the names of Phillip and Kathy Mitchell, their address, Sylvia Erikson's telephone number, the name of the motorbank in Killeen where Campbell and Erikson cashed checks on June 2, the time the check was cashed, 11:14 a.m., and the date the check was cashed.

The investigation of the Mitchells' home by the Copperas Cove Police Department was limited: after taking statements from Kathy Mitchell, no attempt was made to detect any fingerprints at the residence nor to locate any fibers, hairs, clothing, or other foreign items at the residence. Additionally, the law enforcement official who conducted the investigation did not testify.

After giving due consideration to all of the factors enunciated in *Coble,* we conclude beyond a reasonable doubt that the prosecution's third statement did not contribute either to Campbell's conviction or punishment. His third point of error is overruled.

## II. WHETHER THE FACTS ARE SUFFICIENT TO SUPPORT CAMPBELL'S CONVICTION

 In his fourth point, Campbell argues the evidence in the record was insufficient to support his conviction as a matter of law. We disagree. In reviewing a claim of insufficient evidence, the reviewing court

must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).

■■■ Campbell was convicted on one count of burglary of a habitation. A person commits the offense of burglary of a habitation if he, without the effective consent of the owner, enters that habitation and commits a theft. *Id.* Campbell's indictment alleged he committed this offense sometime between May 13 and June 3, 1993. Upon reviewing the facts in the record, which have been listed above in the discussion of Campbell's third point of error, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Campbell committed the offense of burglary of a habitation sometime between May 13 and June 3, 1993. *See also Williams v. State,* 621 S.W.2d 613, 614 (Tex.Crim.App. [Panel Op.] 1981) (Recent unexplained possession of stolen property taken in a burglary is sufficient proof to establish a defendant's guilt of the offense), *cert. denied,* 456 U.S. 908, 102 S.Ct. 1755, 72 L.Ed.2d 165 (1982); *Bolden v. State,* 504 S.W.2d 418, 419 (Tex.Crim.App.1974) (Same). His fourth point is overruled.

III. WHETHER ERROR RESULTED FROM THE TRIAL COURT'S PERMITTING AN UN-LISTED WITNESS TO TESTIFY

■■■ In his first two points Campbell argues the trial court erred in permitting a prosecution witness, Sylvia Erikson, a former coworker of Campbell, to testify at trial despite the state's failure to provide the defense with timely notice of its intention to call her as a witness as required by an order of the court.[8] We disagree.

The facts leading to the state's eventual disclosure of Erikson's name to the defense are as follows: On August 2, 1993, Sylvia Erikson gave a statement to the Killeen Po-

lice Department, which was investigating charges of check fraud against Campbell, that he had attempted to cash a check at a motorbank in Killeen on June 2 while she was in the car.

On November 30 and on or about December 6 the state presented the defense with two different lists of potential witnesses. Erikson's name was not on either list.

On December 8 Campbell's counsel, Paul Guillotte, reviewed the prosecution's file on Campbell but saw no mention of Erikson's name. The record does not indicate whether her name was included in the file prior to December 8. The following day, December 9, Guillotte received a third list of witnesses from the prosecution; again, Erikson's name was not on it.

Also on December 9, Joe Ebarb, with the Coryell County District Attorney's Office, telephoned Guillotte's office to notify him that Erikson might be called as a witness. Ebarb, however, did not provide Guillotte with either an address or a location where she could be reached. The following day, December 10, Assistant District Attorney Bobby Barina informed Guillotte while at the Coryell County Courthouse that Erikson might be called as a witness. Immediately after their meeting, Guillotte checked the state's file on Campbell and found Erikson's name contained therein. Guillotte did not discover from either Barina or the file a location where Erikson could be found.

Finally, during the morning of December 12, 1993, the day before Campbell's trial was to begin, the state handed Guillotte a final witness list which included Erikson's name and the location of her place of employment.

Several weeks prior to the first day of Campbell's trial, the trial court issued an "Omnibus Pretrial Order" in which the prosecution was ordered to furnish to the defense, among other things, a "[l]ist of all anticipated trial witnesses for the State's

---

8. To be exact, Campbell alleges, first, the trial court abused its discretion in allowing a non-listed witness to testify and, second, the state's

failure to include the witness' name on a witness list denied him his right to a fair trial.

case in chief, to be supplemented as other[ witnesses] are discovered." [9]

At a pretrial hearing on the defense's motion in limine and during an *in camera* hearing held at trial Campbell argued both that the state should be precluded from calling Erikson as a witness because it was tardy in discovering her and because the state surreptitiously kept Erikson's identity a secret until only several days before trial. Campbell asserted that, although the August 2 statement was in the hands of the Killeen police and not Copperas Cove, the state should have discovered it much earlier than one week before trial.

The prosecution, on the other hand, argued at these two hearings that the reason for its belated notice to the defense was its inability, despite due diligence, to learn of her identity. It asserted that it first learned of Erikson's existence only several days before trial was to begin when its investigator, Roger Faught of the City of Copperas Cove Police Department, discovered that she had ridden with Campbell to the motorbank in Killeen where Campbell cashed the victims' tax refund check; that Coryell County District Attorney Sandy S. Gately stated that she then interviewed Erikson on December 8, as soon as she learned of Erikson's identity and involvement with Campbell; and that the following day, Ebarb telephoned Guillotte with the information about Erikson.

A trial court's decision to permit a witness to testify, about whom the defense was not informed timely by the prosecution, may constitute an abuse of discretion. *See Bridge v. State,* 726 S.W.2d 558, 566 (Tex. Crim.App.1986). If a witness, whose name is not on a witness list furnished to the defense is permitted to testify, the standard of review is whether the trial court abused its discretion in allowing such witness to testify. *See* TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979); *Bridge,* 726 S.W.2d at 566. Factors to be considered in determining whether the

trial court abused its discretion are whether the prosecutor's actions were in bad faith and whether the defendant could have reasonably anticipated the witness' testimony. *Martinez v. State,* 867 S.W.2d 30, 39 (Tex.Crim. App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994) (citing *Stoker v. State,* 788 S.W.2d 1, 15 (Tex.Crim. App.1989)); *Pena v. State,* 864 S.W.2d 147, 149 (Tex.App.—Waco 1993, no pet.). The lack of bad faith, alone, will support a trial court's ruling that a non-listed witness will be allowed to testify. *See Pena,* 864 S.W.2d at 149.

The trial court, in its discretion, could have found that the state did not act in bad faith in disclosing Erikson's name as a potential witness only several days before trial was to begin.

The defense argued that the prosecution should have located Erikson's August 2 statement sooner than the second week of December even though it was in the possession of the Killeen Police Department and not Copperas Cove's. The state, on the other hand, argued that it simply was not able to locate the statement despite exercising due diligence. Notwithstanding any negligence or lack of due diligence on the part of the prosecution, the trial court, in overruling Campbell's motion, impliedly found there was no bad faith on the part of the prosecution in locating Erikson's statement in a timely manner. The statement was not given to the police department which investigated the burglary; therefore, the trial court could have found that the state did not purposefully withhold Erikson's statement. *See Gowin v. State,* 760 S.W.2d 672, 674 (Tex.App.— Tyler 1988, no pet.) (inadvertently leaving witness' name off witness list does not constitute bad faith by the prosecution).

In impliedly finding that the prosecution did not act in bad faith in disclosing Erikson's name belatedly, we conclude the trial

**9.** We do not know the exact date the order was issued because the order included in the transcript is neither signed by the trial court nor dated. We have no reason, however, to believe an order was not issued because the prosecution does not argue that one was never issued and because the state on at least three separate occa-

sions before Campbell's trial was scheduled to begin presented the defense with witness lists, which it is not required to do absent an order from the court or a request by the defense. *See Young v. State,* 547 S.W.2d 23, 27 (Tex.Crim.App. 1977).

court did not abuse its discretion in overruling Campbell's objection to the trial court's permitting Erikson to testify. Accordingly, his first two points are overruled.

IV. WHETHER CAMPBELL'S INDICTMENT, CONVICTION, AND JUDGMENT ARE CONSISTENT

▆ In his fifth and sixth points of error, Campbell argues the verdict of the jury and the findings of the trial court are inconsistent and that the judgment of the trial court is inconsistent with the indictment. He contends these errors render his judgment and sentence void. We find that the judgment and sentence, because they include an affirmative finding of the use of a deadly weapon, are inconsistent with both the jury's verdict and Campbell's indictment, but hold that the judgment and sentence may be properly reformed to delete the affirmative finding of a deadly weapon.

Campbell's indictment charged him with the burglary of Kathy Mitchell's home on or between May 13 and June 3, 1993. No allegation was made in the indictment that Campbell used or exhibited a deadly weapon in any way. A jury found Campbell guilty of the charged offense, but, as would be expected from the terms of the indictment, there was no finding on the use of a deadly weapon.

At sentencing, however, the trial court found Campbell "did use or exhibit a deadly weapon in the commission of the felony of Burglary of a Habitation." The record reveals no testimony or evidence at any stage of the trial on the use or even the presence of a deadly weapon during the commission of the burglary of the Mitchells' residence.

▆ This court has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and the nature of the case may require. TEX.R.APP.P. 80(b), (c); *Asberry v. State,* 813 S.W.2d 526 (Tex.App.—Dallas 1991, no pet.).

The instant case is controlled by *Flores v. State,* 690 S.W.2d 281 (Tex.Crim.App.1985). In *Flores,* the defendant was convicted of murder by a jury and his sentence was set at life imprisonment by the trial court. *Id.* at 282. After the jury rendered its verdict, the trial court made an affirmative finding during sentencing that a handgun was used and exhibited during the commission of the offense. The trial court did not, however, indicate whether the defendant or a co-defendant used or exhibited the gun. The defendant's indictment charged him with intentionally causing the death of an individual by shooting the victim with a handgun. *Id.* at 283. The trial court, however, instructed the jury following the guilt-innocence stage of the trial, that the defendant would be guilty of the murder as alleged in the indictment if he either acted alone in committing the offense or with another person. *Id.* When the jury rendered its verdict, it made no affirmative finding as to whether the defendant was found to be the actual trigger-man or whether he was found guilty under the law of parties. *Id.*

The defendant argued the trial court's affirmative finding on his actual use of the weapon during the crime was made erroneously. *Id.* The Court of Criminal Appeals held that, because the law of parties was involved, the trial court's affirmative finding on his use of the deadly weapon should have been deleted from the sentence of judgment because the trial court did not indicate who actually used or exhibited the weapon. But more importantly for the consideration of the instant case, the court further held that the affirmative finding on the defendant's use or exhibition of the weapon could be deleted without affecting either the defendant's judgment or sentence. *Id.; see also Mulanax v. State,* 882 S.W.2d 68, 69–71 (Tex.App.— Houston [14th Dist.] 1994, no pet. h.).

We find the trial court erred in making an affirmative finding that Campbell used or exhibited a deadly weapon in the course of burglarizing the Mitchells' home. Nevertheless, Campbell's sentence and judgment may properly be reformed to exclude this affirmative finding. Therefore, the portion of the judgment and sentence referring to the use or exhibition of a deadly weapon will be deleted.

The judgment is affirmed as reformed.

THOMAS, C.J., concurs.

THOMAS, Chief Justice, concurring.

I concur in the disposition of Campbell's appeal. I write separately, however, to confess that I cannot square the plain requirements of Rule 52(a), as interpreted by the Court of Criminal Appeals in *Marin*, with the treatment accorded incurable jury argument as so-called "fundamental" error, *i.e.*, a complaint that can be raised for the first time on appeal. TEX.R.APP.P. 52(a); *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993); *Briddle v. State*, 742 S.W.2d 379, 388–90 (Tex.Crim.App.1987), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988).

The Court of Criminal Appeals has separated a litigant's rights into three distinct categories: (1) rights that can never be waived or forfeited because they are based on absolute requirements and prohibitions— jurisdiction, for example; (2) rights—such as the right to counsel and right to a jury trial—that can be waived but only by an intentional and knowing relinquishment in the record; and (3) rights that are waived merely by the failure to speak up. *Ex parte Sims*, 868 S.W.2d 803, 804 (Tex.Crim.App. 1993) (orig. proceeding); *Marin*, 851 S.W.2d at 279–80. The procedural-default effect of Rule 52(a) applies only to the third category. *Marin*, 851 S.W.2d at 280.

What is it about incurable jury argument that elevates it into the first two categories so as to entitle a litigant to complain about it for the first time on appeal? All it takes for improper argument to qualify as fundamental is that it fall outside the boundaries of permissible argument, either be manifestly improper or violate a mandatory statute or inject some new fact harmful to the defendant, and be so damaging that a curative instruction could not have removed the harm. *Willis v. State*, 785 S.W.2d 378, 385–86 (Tex. Crim.App.1989), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990); *Bower v. State*, 769 S.W.2d 887, 907 (Tex.Crim. App.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

Is it accorded such special treatment solely on the basis that to subject the right to a procedural default somehow implicates a defendant's right to due process? Although the Court of Criminal Appeals has occasionally alluded to the exception to the contemporaneous-objection requirement as being based on the denial of a fair and impartial trial, there is no clear-cut requirement in Texas case law that improper argument result in the denial of due process or due course of law before it will qualify as fundamental error. *Miller v. State*, 741 S.W.2d 382, 392 (Tex.Crim.App.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988) ("Reversible error occurs only when statements to the jury, either individually or collectively, are so extreme, manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision ... that they deprive the accused of a fair and impartial trial"). Moreover, incurable jury argument does not automatically result in a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 179–81, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 646–47, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974) (holding that there is a meaningful distinction between ordinary trial error and the sort of egregious misconduct that results in a denial of due process).

Fundamental error—meaning, in this instance, the right to complain for the first time on appeal about improper jury argument—seemingly depends in the final analysis upon the efficacy of a hypothetical curative instruction. If an instruction would have been effective, the defendant has lost his right to complain because of a procedural default under Rule 52(a); on the other hand, if an instruction could not have cured the harm, Rule 52(a) does not deprive him of the right to raise the complaint for the first time on appeal. Rule 52(a)'s application thus depends, at least in the realm of improper jury argument, not upon the category of the right involved but upon whether the harm is incurable. This analytical approach simply does not square with the guidelines in *Marin*. *Marin*, 851 S.W.2d at 279–80.

According to *Marin*, determining the correct category of the particular right involved will usually settle the question of Rule 52(a)'s application and, thus, decide whether a procedural default has occurred. *Id.* at 279.

The right involved—presumably, the right of a litigant not to be incurably harmed during the state's argument—does not possess the rare characteristics that would justify its inclusion in the first category: rights that are so absolutely guaranteed by the judicial system that they can never be waived or forfeited, even with the litigant's consent. Nor does it share the distinguishing characteristics of category two: rights that may be waived but only in a specialized manner. Rights in both of these categories are not subject to procedural default under Rule 52(a) and, consequently, a complaint about their non-observance can be raised for the first time in the appellate court. *Id.* at 280. A court even has an independent duty to implement rights in the first two categories, with or without the litigant's request. *Id.*

The right not to be incurably harmed by improper jury argument does, however, fit comfortably within category three: rights based on the evidentiary and procedural rules that attend the trial of a criminal case. *Id.* at 278. This category includes all but the most fundamental rights; some constitutional guarantees can even be lost by procedural default. *Id.* at 279. Category-three rights are optional with a litigant, *i.e.*, they may be lost by procedural default or insisted upon, and the court has no independent duty to guarantee their enforcement or implementation. *Id.* at 279–80.

Incurable harm does not arise only from improper jury argument. A defendant is often irreparably harmed by the improper introduction, without any objection, of evidence relating to extraneous offenses. He might get a reversal, but it would have to be on the basis of ineffective assistance of counsel, not on the basis of fundamental error resulting from the improper introduction of evidence. The right to be tried on the offense charged and not as a criminal generally is subject to procedural default. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim. App.1990) (on rehearing). However, if the prosecutor improperly mentions a defendant's extraneous offenses during argument, without objection, and the harm proves to be incurable, the defendant is entitled to treat it as fundamental error. If the right to be tried on the offense charged is treated as a category-three right during the evidentiary phase, *i.e.*, it is subject to procedural default during the evidentiary phase, why is it that the same right cannot be procedurally defaulted during the argument phase? Keep in mind that to be fundamental error there is no absolute requirement that incurable jury argument equate to a denial of due process, just that the harm to the defendant be incurable. *Nichols v. State*, 754 S.W.2d 185, 200 (Tex.Crim.App.1988); *Carter v. State*, 717 S.W.2d 60, 79–80 (Tex.Crim.App.1986), *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 407 (1987). A myriad of other examples can be conjured up to illustrate the dichotomy of subjecting a right to forfeiture during the evidentiary phase but treating it during argument as if it were a right entitled to special protection under category one or two.

The judicial policy served by Rule 52(a) has many salutary effects. First, its requirement of a timely objection allows the trial court to "correct the complained of error at that time and to then proceed with the trial." *Janecka v. State*, 823 S.W.2d 232, 244 (Tex. Crim.App.1990) (on rehearing). If irreparable harm has indeed occurred, as the defendant claims, the court can interdict the proceedings with a mistrial, thereby protecting the defendant's rights and promoting overall judicial economy. Moreover, it prevents the defendant from "lying behind the log" with a good objection, gambling on an acquittal, and then appealing. Yet, the current state of the case law encourages just such a result, which has a deleterious effect on the judicial resources of the state. Finally, except for the unique protection that is understandably afforded rights which cannot be waived or which can only be waived in a special manner, it seems unfair to reverse a court for an act not of its own doing and for an error never brought to its attention: "No appellate court would think of reversing a trial court for improper argument of counsel or for misconduct of the jury or any other act not of the court himself, without in some way calling the matter to the attention of the trial court and procuring his ruling thereon." *Bell v. Blackwell*, 283 S.W. 765, 767 (Tex. Comm'n App.1926, judgment adopted). Although predating the adoption of Rule 52(a)

by sixty years, this statement by the Commission of Appeals perhaps best sums up the fairness rationale behind Rule 52(a).

A three-step analytical process is necessarily required by Rule 52(a). First, the appellate court must determine whether the particular complaint has been preserved for review. This can be done usually by a quick examination of a precise portion of the record. If not preserved, the point encompassing the complaint is overruled without any reference to its merit. Second, if preserved, the appellate court must determine whether the court acted erroneously on the complaint. If it acted properly, there is no error and the point is overruled on its merits. If error occurred, however, the final step is to determine from the record as a whole whether the error is harmless or harmful. Only if the error is harmful will the point be sustained and the judgment reversed. TEX.R.APP.P. 81(b)(2).

The problem with complaints about jury argument, incurable or otherwise, is that the analytical process required by Texas case law essentially requires every complaint to be considered on its merits after a review of the whole record. Opinions of the Court of Criminal Appeals invariably mention the so-called general rule that a timely objection is necessary to preserve a complaint about jury argument for appellate review. *Willis,* 785 S.W.2d at 385; *Briddle,* 742 S.W.2d at 389; *Romo v. State,* 631 S.W.2d 504, 505 (Tex. Crim.App. [Panel Op.] 1982). This would seem to narrow initial consideration of the complaint to a quick, precise examination of the record—if no objection, nothing is presented for review. However, a missing objection "does not end our inquiry." *See Willis,* 785 S.W.2d at 385.

Because only a certain type of jury argument—*i.e.,* improper argument that produces incurable harm—is not subject to procedural default, an appellate court must first determine whether the complained-of argument was improper. Is it (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to argument of opposing counsel, or (4) a plea for law enforcement? *Id.* at 384. A court can hardly answer the first three questions without a careful review of the record. In other words, the court must at the very outset consider the merits of any complaint relating to jury argument, just as if it has been preserved by an objection and an adverse ruling. Of course, if a review of the record shows it to be proper argument, then presumably the complaint has been procedurally defaulted under the general rule that a timely objection is necessary to preserve a complaint relating to jury argument. *Id.* at 385. Declaring a complaint procedurally defaulted retrospectively, often after an exhaustive review of the record and a consideration of the merits of the complaint, seems nonsensical.

If, however, the complained-of argument falls outside the bounds of permissible comment, the reviewing court must then determine, in light of the whole record, whether the argument is manifestly improper, violates a mandatory statute, or injects some new fact harmful to the defendant. *Id.* Again, the court must consider the record and the merits of the complaint. If the argument turns out to be manifestly improper, violative of a mandatory statute, or injects a new, harmful fact, the appellant court must finally consider whether an instruction to disregard would have removed the harm. *Id.* This obviously requires a harm analysis based on the entire record. If a curative instruction would have been effective, the appellate court then declares—after engaging in an extensive review of the record and after considering the merits of the complaint—that "appellant is not entitled to the *Romo* exception to the waiver rule." *Id.* at 386; *Romo,* 631 S.W.2d at 505–06. In other words, appellant, your complaint cannot be considered because you failed to object; accordingly, nothing is presented for review. What could be more nonsensical?

Technically speaking, a complaint relating to jury argument can be "considered" for the first time on appeal only when it involves incurable harm. *See Willis,* 785 S.W.2d at 386. However, as already mentioned, the analytical process requires a reviewing court to treat all such complaints as fundamental error, *i.e.,* it must examine the record and delve into the merits of every complaint.

These musings on incurable jury argument may be for naught. Perhaps there are others who wonder why complaints about improper jury argument, whether or not the harm is curable, are not subject to procedural default under *Marin.* Why is every right implicated by incurable jury argument entitled to the same treatment accorded rights that are considered so fundamental that either they can never be waived or can only be forfeited in a special way?

If *Marin* is correctly decided, then the test for fundamental error should not be whether the harm is incurable. Instead, the definitive test should be whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 179–81, 106 S.Ct. at 2471 (quoting *Donnelly,* 416 U.S. at 641–43, 94 S.Ct. at 1871). This would at least elevate the test to the level of a constitutional violation and preserve a meaningful distinction between ordinary trial error and the type of egregious conduct that amounts to a denial of due process. *Donnelly,* 416 U.S. at 646–48, 94 S.Ct. at 1873. Now, nothing more is required other than simple harmful trial error.

Furthermore, requiring the defendant to establish a violation of due process as a condition precedent to reversal would harmonize the treatment of fundamental error in jury argument with the guidelines in *Marin.* "A judgment of conviction obtained in violation of due process of law is void for want of jurisdiction of the court to enter such a judgment." *Ex parte Tuan Van Truong,* 770 S.W.2d 810, 812 (Tex.Crim.App.1989) (orig. proceeding) (citing *Ex parte Young,* 418 S.W.2d 824, 826 (Tex.Crim.App.1967)). If violation of due process is made the test, then treating complaints of improper jury argument as fundamental error would comport with the first category of rights recognized in *Marin*—rights based on absolute requirements and prohibitions.

As long as complaints can be raised for the first time on appeal, an appellate court can never forego its duty to determine whether the complaint falls within the first two categories of *Marin,* which necessarily involves a review of the record and a consideration of the merits. But, as the Court noted in *Marin,* fundamental-error treatment is reserved only for those relatively few rights that our society and system deem so precious that they are entitled to special protection from procedural default. As things stand now, we essentially grant every complaint of incurable jury argument such special treatment based on plain harmful trial error.

Of course, as a lower court we are bound by the interpretations and rulings of our superior courts. That does not mean, however, that we should not suggest that a review of the case law in this particular area may be warranted.