In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00156-CR


______________________________




ALBERT PILO SALINAS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 185th Judicial District Court


Harris County, Texas


Trial Court No. 875130




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Albert Pilo Salinas appeals his conviction for aggravated robbery, with one enhancement
paragraph, for which the jury assessed his punishment at eighteen years' confinement.

 Salinas contends his trial counsel rendered ineffective assistance of counsel by failing to
object to Rebecca Torres's testimony on the ground that her testimony was prohibited by spousal
privilege, and to Officer Ralph Freeze's testimony on the ground that Torres's statements to Officer
Freeze were privileged. Salinas also contends the trial court erred in denying his request for a
mistrial based on the State's improper closing argument and comment on his right not to testify. 

 The record reflects evidence of the following: On October 20, 2000, after Denys Sanchez
met James Pardon at a convenience store, and he took Pardon and Pardon's friend, Salinas, back to
his apartment, Salinas and Pardon pulled a gun on Sanchez, hit him, tied him up in his bedroom,
placed some of Sanchez's property into a bag, which they loaded into Sanchez's car, threatened to
kill Sanchez if he told anyone about the incident, and drove away in Sanchez's car. While Salinas
and Pardon were driving away, Sanchez was able to free himself and obtain the assistance of a
nearby officer, who ordered Salinas and Pardon to get out of the vehicle. They both fled on foot and
jumped the fence of the property. 

 On October 22, 2001, Officer Freeze detained Pardon for questioning, went to Pardon's
residence and spoke with Torres, who identified herself as Pardon's wife. Officer Freeze also placed
Salinas under arrest, went to his residence and spoke with his sister, Maribel Salinas. At trial, Torres
testified to statements made by Pardon on the night of the robbery. Officer Freeze testified to
statements Torres made to him when he had spoken with her at Pardon's residence. 

 It is the defendant's burden to prove ineffective assistance of counsel by a preponderance of
the evidence. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To prevail on a claim
of ineffective assistance of counsel, the appellant must show both 1) that counsel's performance was
so deficient it was outside the range of reasonable professional judgment and 2) that the appellant
was prejudiced by this performance and there is a reasonable probability, one sufficient to undermine
confidence in the outcome of the trial, that the result of the trial would have been different. Id. at
812. An appellant must demonstrate trial counsel's ineffectiveness in light of the totality of the
circumstances. Id. The appellant must overcome the presumption that the challenged action might
be considered sound trial strategy. Id. at 813-14. The fact that another attorney may have pursued
a different strategy does not necessarily indicate ineffective assistance of counsel. See Hawkins v.
State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983). When facing a silent record as to defense
counsel's strategy, the court will not speculate as to defense counsel's tactics or guess what the
reasons might be for taking or not taking certain actions. See Jackson v. State, 877 S.W.2d 768, 770-71 (Tex. Crim. App. 1994). Without evidence of the strategy and methods involved concerning
counsel's actions at trial, the court will presume sound trial strategy. See Thompson, 9 S.W.3d at
814. 

 Salinas contends his counsel failed to object to testimony from his codefendant's wife, Torres,
and from Officer Freeze on the ground that they were privileged under Rule 504(a) of the Texas
Rules of Evidence, which provides in pertinent part:

 (a) Confidential Communications Privilege.


 (1) Definition. A communication is confidential if it is made privately by
any person to the person's spouse and it is not intended for disclosure to any other
person. 


 (2) Rule of privilege. A person, whether or not a party, or guardian or
representative of an incompetent or deceased person, has a privilege during marriage
and afterwards to refuse to disclose and to prevent another from disclosing a
confidential communication made to the person's spouse while they were married.


 (3) Who may claim the privilege. The confidential communication
privilege may be claimed by the person or the person's guardian or representative, or
by the spouse on the person's behalf. The authority of the spouse to do so is
presumed. 


Tex. R. Evid. 504(a).

 First, because Rule 504(a) only protects against statements made confidentially to a spouse
during marriage, it does not encompass statements made by Torres to Officer Freeze. 

 Second, although Salinas is neither Torres's spouse nor her spouse's representative, and could
not have claimed the spousal privilege regarding Torres's testimony, Salinas contends that because
he was engaged in a joint trial with Pardon, Salinas's trial counsel could have objected on Pardon's
behalf or could have prompted Pardon's counsel to object on his client's behalf and prevented the
damaging evidence from being used against either defendant. However, Salinas cites no authority
entitling him to claim a privilege for his codefendant when that codefendant waived the privilege,
or any support to show that his own counsel was responsible for prompting the codefendant's counsel
to object to the testimony. 

 There is no affirmative showing in the record that Torres and Pardon were married at the time
Pardon made the statements to Torres about which she testified. Although she referred to Pardon
as her husband when she spoke with Officer Freeze on October 22, 2000, during direct examination
on May 1, 2001, she stated they had only been married for two months. Because counsel's failure
to object to admissible testimony does not constitute ineffective assistance, Salinas has not
demonstrated the deficient performance of his trial counsel. See Rodriguez v. State, 975 S.W.2d 667,
674 (Tex. App.-Texarkana 1998, pet. ref'd). This point of error is overruled. 

 Salinas also contends the prosecutor engaged in improper jury argument during his closing
statements to the jury by commenting on Salinas's failure to testify and injecting testimony not in
evidence. 

 Proper jury arguments must fall within one of the following categories: 1) summation of the
evidence, 2) reasonable deduction from the evidence, 3) response to argument of opposing counsel,
and 4) plea for law enforcement. See Cook v. State, 858 S.W.2d 467, 476 (Tex. Crim. App. 1993). 
It is improper for a prosecutor to interject his personal opinion or testimony not in evidence in a
statement made to a jury. See Johnson v. State, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985). The
prosecutor may also not comment on the failure of the defendant to testify. See Bustamante v. State,
48 S.W.3d 761, 764 (Tex. Crim. App. 2001). 

 Salinas contends that the following remarks, made by the prosecutor, were improper:

 (1) "Is this a fairy tale, one of those stupid little stories they tell you after lunch before your
nap time in nursery school? That's what they think."

 (2) "What are they doing in his car? You know? You never heard anything about that from
them, did you?"

 (3) "What did my complainant tell you ? I used this demonstrative (1) [sic] because this guy got
rid of the gun, all right?"

 The trial court sustained objections to all of the above comments. With regard to the second
and third comments, the court provided instructions to disregard, but denied requests for mistrial.

 Salinas did not preserve error regarding the first comment for review, because he did not
follow his objection with a request for an instruction to disregard and a request for mistrial. Also,
in context, that comment was made in response to the defense portraying Sanchez, the victim, as the
boy who cried wolf because he had changed his story. (2) When defense counsel invites argument, it
is appropriate for the state to respond. See Albiar v. State, 739 S.W.2d 360, 362 (Tex. Crim. App.
1987). 

 Salinas argues that the second statement was a comment on Salinas's failure to testify and
was designed to call to the jury's attention the absence of evidence that could only be supplied by the
testimony of the accused. 

 The test to be applied when determining whether a violation of the privilege against self-incrimination has occurred is whether the language used was manifestly intended or was of such
character that the jury would naturally and necessarily consider it to be a comment on the defendant's
failure to testify. See Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). It is not
sufficient that the language might be construed as an implied or indirect allusion to the defendant's
failure to testify. See Madden v. State, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990). "Language
that can reasonably be construed to refer to a failure to present evidence other than from the
defendant's own testimony does not amount to comment on [the defendant's] failure to testify."
Swallow, 829 S.W.2d at 225. However, error has been found where the argument pointed to
evidence that only the defendant could supply. Id. 

 The State argues that the prosecutor's comment, "You never heard anything about that from
them," is not a comment on Salinas's failure to testify because the word them could be referring to
anyone with knowledge about the robbery and the vehicle. The State argues that because other
witnesses with information about the robbery had been called, such as Torres, Maribel, and
Officer Freeze, the jury may have understood that the prosecutor referred to any of those witnesses
or to others Salinas might have called to testify. Although a prosecuting attorney may comment on
the failure of a defendant to call competent and material witnesses when it is shown that such
witnesses were available to testify on behalf of a defendant but were not called by the defendant to
testify, see Garrett v. State, 632 S.W.2d 350, 354 (Tex. Crim. App. [Panel Op.] 1982), the prosecutor
did not mention any other particular witnesses or persons that should have been called by the defense
as witnesses. Additionally, this statement was made after a long monologue in which the prosecutor
repeatedly refers to the defendants as "they." In context, it is clear the prosecutor was referring to
the defendants when he said, "You never heard anything about that from them." 

 A prosecutor's comment on a defendant's failure to testify is not automatically reversible
error. See Madden, 799 S.W.2d at 699 n.28. The applicable legal standard of review is whether this
court can determine beyond a reasonable doubt that the error did not contribute to the conviction. 
Tex. R. App. P. 44.2(a). In conducting this harm analysis, we consider the nature and source of the
error, the degree to which the prosecutor emphasized the erroneous jury argument, probable
collateral implications, the weight a juror placed on the erroneous jury argument, whether holding
the improper jury argument harmless would encourage the state to repeat it, the arguments of the
parties, evidence in the record of the defendant's guilt, and whether the comment was made in bad
faith. Coble v. State, 871 S.W.2d 192, 206 (Tex. Crim. App. 1993). 

 The State argues that the court's instruction to disregard, as well as the jury charge providing
that a defendant's failure to testify cannot be taken as a circumstance against him, cured the error. 
See Jackson v. State, 745 S.W.2d 4, 15 (Tex. Crim. App. 1988); Campbell v. State, 900 S.W.2d 763,
769 (Tex. App.-Waco 1995, no pet.). As a general rule, any error associated with improper jury
argument can be cured by an instruction for the jury to disregard the comment "unless the remark
is so inflammatory that its prejudicial effect cannot reasonably be removed by such an
admonishment." See Long v. State, 823 S.W.2d 259, 269 (Tex. Crim. App. 1991). There is a
presumption that the jury will obey the instruction to disregard. See Gardner v. State, 730 S.W.2d
675, 696 (Tex. Crim. App. 1987). 

 The statement made by the prosecution was not so inflammatory that its prejudicial effect
could not be reasonably removed by the instruction from the court to disregard. The State did not
emphasize the statement. There is no evidence that the statement was made in bad faith. There is
substantial evidence of guilt. The instruction and the jury charge were sufficient to cure this error. 

 Salinas argues that the third statement was an attempt to inject testimony into the record,
because there was no evidence that either defendant had disposed of a gun. Again, when defense
counsel invites argument, it is appropriate for the state to respond. See Albiar, 739 S.W.2d 362. The
defense argued there was no testimony or evidence of a weapon used in the robbery, and a weapon
was not found. The prosecutor's statement was made in the context of reminding the jury that the
victim had testified that a gun was used. Additionally, counsel is generally afforded wide latitude
in drawing inferences from the record as long as such inferences are reasonable and offered in good
faith. See Coble, 871 S.W.2d at 205. The prosecutor's statement explained that no weapon was
found by inferring from the evidence that, because no gun was found in the car or in the homes of
the two defendants, at some point they must have disposed of it. Again, Salinas asked for and
received an instruction for the jury to disregard the statement. Any harm created by the third
statement was cured by the instruction. This issue is overruled. 

 The judgment of the trial court is affirmed. 



 Ben Z. Grant

 Justice


Date Submitted: May 31, 2002

Date Decided: June 4, 2002


Do Not Publish
1. The demonstrative item referred to was a gun similar to the one Sanchez testified the
defendants used in the robbery.
2. This is a literary allusion to Aesop's fable "The Shepherd Boy and the Wolf." We note that
the allusion is misplaced as the shepherd boy in the fable does not change his story regarding a single
wolf attack, but repeatedly cries wolf when there is no wolf so that he has lost credibility and no one
responds when he cries for help when a wolf does attack.