# NO. 12-08-00459-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHRIS RANDALL COWGER,* *APPELLANT* | § | *APPEAL FROM THE 124TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Chris Randall Cowger appeals his conviction for felony driving while intoxicated (DWI). He raises five issues on appeal. We affirm.

## BACKGROUND

Shortly after midnight on October 30, 2007, Longview police officer Jason Hampton observed Appellant driving away from a house that was a known narcotics trafficking location. The house had been the site of at least twenty-five felony arrests that had occurred over the two to three year period preceding the arrest. Officer Hampton stopped Appellant after seeing him commit two traffic violations. Appellant was upset because he had been stopped, and Officer Hampton considered his behavior "erratic." The officer asked Appellant to step out of his vehicle, and Appellant complied. However, Appellant fumbled getting his license out of his wallet and provided inconsistent details in explaining why he possessed three different drivers licenses. Officer Hampton suspected that Appellant was intoxicated, and began conducting field sobriety tests. He checked for horizontal nystagmus, which he did not find. Officer Hampton

did not detect any odor of alcohol coming from Appellant's person, but he noticed gold paint on Appellant's knuckles. Officer Hampton observed that, even though the stop occurred at night, Appellant had fixed, "pinpointed" pupils, when ordinarily a person's pupils would have been dilated until presented with a light source. The officer asked Appellant to perform other field sobriety tests requiring coordination, but decided not to proceed with them after Appellant stated that he was disabled. Therefore, Officer Hampton did not conduct the walk and turn test or the one leg stand.

Appellant offered to give a breath sample, but refused to give a blood sample. Based on his observations of Appellant, the officer arrested Appellant. Appellant was indicted for felony DWI because he had two prior DWI convictions. At trial, the jury convicted Appellant of felony DWI and assessed four years of imprisonment.

### IMPERMISSIBLE COMMENT ON THE EVIDENCE

In his first issue, Appellant challenges the portion of the jury charge instructing the jury that it "may consider the Defendant's refusal to submit to a blood test, if he did, as evidence of intoxication in this case." Appellant argues that this instruction was an impermissible comment on the weight of the evidence.

### Standard of Review

The function of the jury charge is to inform the jury of the applicable law and to guide the jury in its application of the law to the case that the jury must decide. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). Because judges are neutral arbiters in the Texas adversarial system, the charge must not express any opinion as to the weight to be accorded to the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003). When reviewing a jury charge, we first determine whether error exists and, if error does exist, we address whether the harm caused by the error warrants reversal. *Hutch*, 922 S.W.2d at 170-71.

### Applicable Law

"A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood . . . may be introduced into evidence at the person's trial." TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999). In the past, trial judges often instructed juries in DWI trials using

2

language similar to that in the statute. This practice is now prohibited by the holding of the Texas Court of Criminal Appeals "that a jury instruction informing the jury that it may consider evidence of a refusal to take a breath [or blood] test constitutes an impermissible comment on the weight of the evidence." *Bartlett v. State*, 270 S.W.3d 147, 154 (Tex. Crim. App. 2008). Of course, that evidence is still admissible, and the jury may consider it. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999).

Where, as here, a defendant does not object to the jury charge, reversible error exists only if the record shows a defendant has suffered not only actual harm, but egregious harm resulting from the incorrect charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (establishing proper standard of review for jury charge error in absence of objection to jury charge). Egregious harm arises if the error is so severe that it deprived the accused of a fair and impartial trial. *Id.* In determining whether egregious harm exists, we consider the following factors: (1) the entire jury charge; (2) the state of the evidence; (3) the arguments of counsel; and (4) any other relevant information in the record as a whole. *Id.; see also Vargas v. State*, 271 S.W.3d 338, 340 (Tex. App.–San Antonio 2008, no pet.) (applying egregious harm test to instruction at issue here). "Egregious harm is a difficult standard to prove and such determination must be done on a case-by-case basis." *Hutch*, 922 S.W.2d at 171.

**Discussion**

In the charge in this case, the trial court instructed the jury that it "may consider the [appellant's] refusal to submit to a blood test, if he did, as evidence of intoxication in this case." The trial court erred by including the instruction in the jury charge. *See Bartlett*, 270 S.W.3d at 154. However, Appellant did not object to the submission of this instruction. Therefore, to determine whether reversible error exists, we must determine whether the inclusion of the instruction caused Appellant egregious harm. *See Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993).

Examining the jury charge itself, the instruction was two lines of the entire charge and was not set out in a separately numbered paragraph. The charge was otherwise unobjectionable and contained common instructions and questions for a DWI case. Furthermore, the charge did not reduce the State's burden of proof. *See Hess v. State,* 224 S.W.3d 511, 516 (Tex. App.–Fort Worth 2007, pet. ref'd).

3

Second, there was sufficient evidence to convict Appellant despite the erroneous inclusion of the instruction in the charge. Appellant was observed leaving a known drug house shortly after midnight. He fumbled with his wallet when trying to retrieve his drivers license. He made inconsistent statements regarding his possession of three drivers licenses. He claimed that he could not perform the field sobriety tests because he was disabled. But the State introduced evidence that he was seen walking through the courthouse at a brisk pace without difficulty and that he crossed a waist high plastic chain by quickly lifting each of his legs over the chain. His pupils were pinpointed and not reactive to light. Appellant admitted to taking 120 Vicodin pills and 240 methadone pills each month. He also admitted that he had just taken two of each shortly before the traffic stop.

As to the third factor, the prosecutor argued as follows in closing argument:

> The very next line, you're instructed that you may consider the defendant's refusal to submit [to] a blood test as evidence of intoxication in this case. You may consider that. How much weight do you want to give it, that's for you to decide. You can find him guilty off [sic] this alone, all right? Why would he not give it? Is he afraid of needles?

A refusal to provide a specimen of blood is admissible evidence. TEX. TRANSP. CODE ANN. § 724.061. Although a judge may no longer instruct the jury on the refusal to provide a blood or breath specimen, a comment by the prosecutor on the refusal is permissible. *Leija v. State*, No. 04-08-00679-CR, 2009 WL 331897, at *3 (Tex. App.–San Antonio Feb.11, 2009, no pet.) (mem. op., not designated for publication) (concluding that a prosecutor may still comment on a refusal to submit to a breath or blood test in light of *Bartlett*); *Vargas*, 271 S.W.3d at 341 (same). Further, the State may summarize evidence as part of its jury argument, which includes the failure to submit to a breath or blood test and that such failure is evidence of intoxication. *Leija*, 2009 WL 331897, at *3; *Vargas*, 271 S.W.3d at 341. Thus, the State's argument, insofar as it constitutes a comment on Appellant's refusal to submit to a blood test or a summary of the evidence, is proper.[1]

---

[1] We express no opinion about whether the prosecutor correctly stated the law when he, without objection from Appellant, informed the jury that it could find Appellant guilty based solely on his failure to submit to a blood test. However, we will assume for the purpose of our harm analysis that the prosecutor misstated the law. Under this assumption, the impact of the misstatement was adequately mitigated by the prosecutor's preceding comment that the jury could decide for itself how much weight to give Appellant's failure submit to a blood test.

After considering the above factors and the evidence related to each factor as a whole, we cannot conclude that the charge error was so severe that it deprived Appellant of a fair and impartial trial. Accordingly, we hold that the inclusion of the instruction in the jury charge does not amount to egregious harm.

We overrule Appellant's first issue.

### UNDISCLOSED WITNESS

In his third issue, Appellant contends that the trial court erred in allowing the testimony of Deputy Yvette Roth, whom the State had not listed as a potential witness, without granting a continuance.

**Standard of Review**

The standard of review where a witness not included on a witness list is permitted to testify is whether the trial court abused its discretion in allowing the testimony. *See **Martinez v. State**, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); **Stoker v. State**, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989). The burden to show that the trial court abused its discretion is on the appellant. *See **Depena v. State**, 148 S.W.3d 461, 467 (Tex. App–Corpus Christi 2004, no pet.). Unless the appellant makes the necessary showing, the trial court's decision to allow the testimony will not be disturbed on appeal. *See **id.**; **Castaneda v. State**, 28 S.W.3d 216, 223 (Tex. App.–El Paso 2000, pet. ref'd).

**Facts**

Before making his opening statement, the prosecutor announced the following:

> This just came to the State's attention yesterday afternoon, . . . the defendant exited the courthouse, he was witnessed by Yvette Roth of courthouse security, as well as Joe Nolley of courthouse security, neither one of these people were on our witness list at the time we picked the panel, but it has come to our attention that they saw the defendant, they saw him moving, and that is an issue in our case because the defendant claims disability. And he apparently was not moving with disability, and we would ask to call them as witnesses.

Appellant's counsel objected because those witnesses were not disclosed on the witness list.[2]

---

[2] The trial court granted Appellant's "Motion for Witness List" and "Motion for Discovery," thereby requiring disclosure of the State's witnesses and supplementation of the list as necessary.

Appellant's counsel also stated that "[i]f the court does allow those witnesses to testify as to my client's disability, then I would ask the court for a continuance so I can subpoena my client's doctor to be able to rebut that evidence, your honor." The trial court overruled the objection, denied the continuance, and allowed the testimony.

The State called Deputy Roth, but not Deputy Nolley. Deputy Roth testified that she saw Appellant walking through the courthouse at a brisk pace without difficulty and that he crossed a waist high plastic chain by quickly lifting each of his legs over the chain. The purpose of this testimony was to rebut Appellant's claim of disability. During her testimony, Deputy Roth mentioned that she had seen Appellant not only the day before trial, but had also seen him cross the chain without difficulty several months prior to his trial.

## Applicable Law

There is no general constitutional right to discovery in a criminal case. **Weatherford v. Bursey**, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977). "Although the Due Process Clause confers upon defendants a right to be informed about the existence of exculpatory evidence, it does not require the prosecution to 'reveal before trial the names of all witnesses who will testify unfavorably.' " **Ex parte Pruett**, 207 S.W.3d 767, 767 (Tex. Crim. App. 2005) (quoting **Weatherford**, 429 U.S. at 559, 97 S. Ct. at 845). The code of criminal procedure affords a defendant the right to limited discovery. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2009); **Badillo v. State**, 255 S.W.3d 125, 130 (Tex. App.–San Antonio 2008, no pet.). However, the code "does not mandate disclosure of witnesses generally but only of expert witnesses and then only when ordered by the court." **Badillo**, 255 S.W.3d at 130. In other words, nonexpert witnesses need not be disclosed and any list voluntarily provided by the state need not be supplemented unless the trial court ordered it. *See* **id.**

In determining whether the trial court abused its discretion by allowing the testimony of an unlisted witness, we consider 1) whether the state acted in bad faith in failing to provide the defense with the name of the witness and 2) whether the defendant could reasonably anticipate that the witness would testify despite the state's failure to disclose the witness's name. *See* **Wood v. State**, 18 S.W.3d 642, 649-50 (Tex. Crim. App. 2000); **Nobles v. State**, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 1992). A lack of bad faith alone will support a trial court's ruling allowing an unlisted witness to testify. **Campbell v. State**, 900 S.W.2d 763, 772 (Tex. App.–Waco 1995, no

pet.).

In determining whether the state acted in bad faith, we ask whether 1) the defendant established that the state intended to deceive him, 2) the state's notice left the defendant adequate time to prepare, and 3) the state freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly notifying the defendant of new witnesses. *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.–Texarkana 2000, pet. ref'd). Similarly, in determining whether the defense could have anticipated the state's witness, we look to 1) the degree of surprise to the defendant, 2) the degree of disadvantage inherent in that surprise, and 3) the degree to which the trial court was able to remedy that surprise (e.g., by granting the defense a recess, postponement, or continuance). *Id.* at 88-89.

## Bad Faith

By overruling Appellant's objection, denying his request for a continuance, and allowing Deputy Roth's testimony, the trial court implicitly found that the State did not act in bad faith and had no intent to deceive Appellant. *See Campbell v. State*, 900 S.W.2d 763, 772 (Tex. App.–Waco 1995, no pet.) (where trial court allowed testimony of unlisted witness and denied continuance to subpoena rebuttal witnesses, trial court impliedly found state did not act in bad faith); *see also Castaneda v. State*, 28 S.W.3d 216, 223 (Tex. App.–El Paso 2000, pet. ref'd) (same).

On appeal, Appellant implicitly argues that the State acted in bad faith when it failed to include Deputy Roth's name on its witness list. As support, he contends that Deputy Roth's statement that she had seen him several months before indicated that the State knew the substance of Deputy Roth's testimony before the trial but failed to disclose it. However, Deputy Roth's prior observation of Appellant, standing alone, does not support this conclusion. Moreover, Appellant did not assert to the trial court that the State intended to deceive him by failing to list the proposed witness. Nor did Appellant point to any prior discovery violations by the State. Instead, he requested a continuance to subpoena his doctor to rebut the proposed testimony. Because the continuance was denied, Appellant had insufficient time to subpoena his doctor and was left with cross examination as his sole means of defending against Deputy Roth's testimony.

Of the three bad faith elements, the second—inadequate time to prepare—is the only one that weighs in Appellant's favor. As to the remaining elements, the record does not indicate that

the State intended to deceive Appellant by not listing Deputy Roth as a witness or that it had previously failed to comply with the trial court's discovery order. Consequently, we conclude that the record supports the trial court's implied finding that the State did not act in bad faith.

**Reasonable Anticipation of the Testimony**

Appellant first learned of the witness on the day the trial began. Therefore, Deputy Roth's testimony appears to have been a surprise to both sides. *See Franks v. State*, 90 S.W.3d 771, 809 (Tex. App.–Fort Worth 2002, no pet.). Since this is a DWI case based primarily on the observations of the arresting officer, the credibility of the parties and witnesses was a key element of the trial. Deputy Roth's testimony undermined Appellant's credibility, because it tended to establish that Appellant was not truthful as to the existence or extent of his disability. Appellant acknowledges that his statements to Officer Hampton regarding his disability made his disability a significant issue at trial. Consequently, he should reasonably have anticipated that the State would attempt to discredit his statements. However, the record does not contradict his assertion that the State's disclosure of Deputy Roth as a witness resulted in a high degree of surprise. Furthermore, Appellant had insufficient time to subpoena his doctor to provide expert testimony about his disability. Although we cannot speculate about how effectively his doctor may have countered Deputy Roth's testimony, we agree that Appellant's inability to subpoena him was disadvantageous to Appellant. He asked for a continuance, which was denied. Thus, the trial court did not attempt to remedy the surprise. Consequently, the second factor of the test–the foreseeability component–weighs in Appellant's favor.

However, in any event, as discussed above, a lack of bad faith alone will support a trial court's ruling allowing an unlisted witness to testify. *Campbell*, 900 S.W.2d at 772. We have determined that the record supports the trial court's implied finding that the State did not act in bad faith. Therefore, we cannot conclude on the record before us that the trial court abused its discretion in allowing Roth's testimony without granting the continuance requested by Appellant.

We overrule Appellant's third issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant contends that trial counsel was ineffective because he 1) failed to subpoena Appellant's doctor to rebut the testimony that Appellant had sufficient mobility

to perform the sobriety tests, 2) failed to object to the court's submission of the instruction regarding Appellant's failure to submit to a blood test, and 3) failed to object to the State's jury argument on the submission of the instruction.

**Standard of Review**

To establish ineffective assistance of counsel, a defendant must show both that trial counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The defendant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Ex parte Chandler*, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005); *Bone*, 77 S.W.3d at 833.

To show deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). We presume trial counsel acted within the proper range of reasonable and professional assistance and that his trial decisions were based on sound strategy. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)). To overcome this presumption, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App.1996), *cert. denied*, 519 U.S. 1119, 117 S. Ct. 966, 136 L. Ed. 2d 851 (1997), *abrogated on other grounds*, *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). We will not speculate as to the basis for counsel's actions; thus a record that is silent on the reasoning behind counsel's actions is sufficient to deny relief. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd); *see Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

To show he was prejudiced by counsel's deficient performance, a defendant must demonstrate there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Failure to prove either deficient performance or prejudice is fatal to any complaint of ineffective assistance. *Strickland*, 466 U.S. at 700, 104 S. Ct. 2052. The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is

entitled to errorless or perfect counsel." ***Ex parte Welborn***, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

**Discussion**

Appellant argues that his trial counsel was ineffective in "failing to subpoena Appellant's doctor as a rebuttal witness and failing to object to the Court's instruction that the jury may consider the Appellant's refusal to submit to a blood test . . . as evidence of intoxication, and further failing to object to the Prosecutor's closing argument."

Rule 38.1(i) of the Texas Rules of Appellate Procedure provides that an appellate brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i) (formerly TEX. R. APP. P. 38.1(h)). When an appellant does not adequately comply with rule 38.1(i), nothing is presented for appellate review. *See **State v. Gonzalez***, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993); ***Nguyen v. State***, 177 S.W.3d 659, 669 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd). Here, with regard to Appellant's contentions that his trial counsel was ineffective in "failing to subpoena Appellant's doctor as a rebuttal witness" and "failing to object to the Prosecutor's closing argument," Appellant provides only bare allegations, with no substantive analysis of how these failures might equate to ineffective assistance. Therefore, Appellant waived those arguments. *See* TEX. R. APP. P. 38.1(i)

In regard to Appellant's complaint about his trial counsel's failure to object to the jury instruction pertaining to his failure to submit to a blood test, it was unclear prior to ***Bartlett*** that the submission of such an instruction was improper. *See, e.g., **Smith v. State***, 8 S.W.3d 450, 451 (Tex. App.–Waco 1999, no pet.) (finding no error in a similar charge); ***Finley v. State***, 809 S.W.2d 909, 913 (Tex. App.–Houston [14th Dist.] 1991, pet. ref'd) (concluding that "[i]t is inconceivable that the legislature would provide that such evidence is admissible and at the same time contemplate that the jury should be instructed not to consider it as evidence of guilt"); *but see **Hess v. State***, 224 S.W.3d 511, 515 (Tex. App.–Fort Worth 2007, pet. ref'd) (holding that an instruction such as the one here is an impermissible comment on the evidence). ***Bartlett*** was not decided until after Appellant perfected his appeal. *See **Bartlett***, 270 S.W.3d at 147. Thus, Appellant's trial counsel's failure to object to the instruction does not constitute deficient conduct, and Appellant has not met the first prong of ***Strickland***. Even if he had, there is no evidence in the

10

record that Appellant was prejudiced by counsel's performance.

We overrule Appellant's second issue.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant challenges the legal and factual sufficiency of the evidence to support the verdict.

## Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

When reviewing the factual sufficiency of the evidence to support a conviction, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009). In conducting a factual sufficiency review, we must discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Although we are authorized to disagree with the jury's determination to a very limited degree, we must nevertheless give the jury's verdict a great degree of deference. *Steadman*, 280 S.W.3d at 246. Our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

11

## Applicable Law

A person commits the crime of DWI if he "is intoxicated while operating a motor vehicle." TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). The elements of that crime are that 1) the defendant, 2) operated, 3) a motor vehicle, 4) while intoxicated, and 5) on or about the date alleged in the State's charging instrument. *Id.*; *see also **Paschall v. State***, 285 S.W.3d 166, 174 (Tex. App.–Fort Worth 2009, pet. ref'd). In a felony DWI case, the state must also prove that the accused has twice previously, and sequentially, been convicted of DWI. TEX. PENAL CODE ANN. § 49.09(b)(2) (Vernon 2003); ***Paschall***, 285 S.W.3d at 174.

"Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." TEX. PENAL CODE ANN. § 49.01(2)(A). The opinion testimony of the arresting officer alone is legally sufficient to support a finding of intoxication. *See **Annis v. State***, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979); ***Crawford v. State***, 643 S.W.2d 178, 180 (Tex. App.–Tyler 1982, no pet.). The only disputed element in this case is whether there is sufficient evidence to demonstrate that Appellant was intoxicated.

## Legal Sufficiency

Officer Hampton testified that, shortly after midnight, he observed Appellant leaving a known drug house where more than twenty-five felony arrests had been made over the preceding two to three years. Officer Hampton stopped Appellant after seeing him commit two traffic violations. The officer testified that upon interviewing Appellant, he suspected intoxication because the Appellant acted "erratically," fumbled for his drivers license, and gave inconsistent stories about why he had three drivers licenses. While searching Appellant's vehicle, Officer Hampton discovered an "old" beer. He asked Appellant to perform field sobriety tests, but Appellant responded that he was disabled. Consequently, Officer Hampton had Appellant perform a horizontal nystagmus test,[3] which in his opinion, showed that Appellant was likely not intoxicated from alcohol. However, the officer noticed that Appellant's pupils were fixed,

---

[3] Officer Hampton also required Appellant to perform the vertical gaze nystagmus test, but the reliability of that test has been questioned. *See **Stovall v. State**,* 140 S.W.3d 712, 718 (Tex. App.—Tyler 2004, no pet.).

12

pinpointed, and not reactive to light. This led him to believe that Appellant was intoxicated from a substance other than alcohol, because normally a person's pupils would constrict when presented with a light source and dilate in the absence of a light source at night. Officer Hampton noticed gold paint residue on Appellant's hands and knuckles, which, according to his training and experience, indicated inhalant abuse. Appellant offered to provide a breath specimen, but refused to submit to a blood test. Appellant admitted to taking 120 Vicodin pills and 240 methadone pills each month. He admitted taking two Vicodin pills and two methadone pills shortly before his arrest, and stated that the pills make him "kind of 'stupid' for about an hour" after he takes them. Officer Hampton testified that, in his opinion, Appellant was intoxicated. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the verdict.

**Factual Sufficiency**

Appellant argues that no physical evidence of intoxication was presented to the jury. Specifically, Appellant argues that nystagmus was not present, other field sobriety tests were not performed due to Appellant's claim of disability, a search of Appellant and his vehicle revealed no drugs, Appellant did not slur his speech or stagger, and the reason for the gold paint residue on his hands was that he had just painted his bumper. However, Officer Hampton testified that he believed Appellant was intoxicated based on his observations, and relayed those observations to the jury. Appellant admitted on the videotape that he took two Vicodin pills and two methadone pills prior to the traffic stop. He also admitted the deleterious effect the pills had on him. When there is conflicting evidence, the jury's resolution of the conflicts is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). Here, the jury resolved the conflicts in favor of the State, which it was authorized to do. *Cain v. State*, 958 S.W.2d 404, 409-10 (Tex. Crim. App. 1997). Having reviewed the record in its entirety, with consideration given to all the evidence, both for and against the trial court's finding, we cannot say that the proof of guilt is so obviously weak or otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment.

Appellant's fourth issue is overruled.

13

In his fifth issue, Appellant contends that his sentence is excessive under the Eighth Amendment to the United States Constitution.

Appellant was convicted of DWI with two prior convictions of the same offense, a third degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (Vernon 2003). The punishment for such an offense is a term of imprisonment between two and ten years. *Id.* § 12.34. The jury assessed punishment at four years, which falls within the range set forth by the Texas Legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See **Harris v. State***, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); ***Jordan v. State***, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973).

Appellant concedes that his punishment is within the statutory range, but he contends it is grossly disproportionate to the facts of this case in violation of the Eighth Amendment. *See* U.S. CONST. amend. VIII; ***Solem v. Helm***, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983). The proportionality of a sentence is evaluated by considering 1) the gravity of the offense and the harshness of the penalty, 2) the sentences imposed on other criminals in the same jurisdiction, and 3) the sentences imposed for commission of the same crime in other jurisdictions. ***Solem***, 463 U.S. at 292, 103 S. Ct. at 3011. Unless Appellant establishes that his sentence is grossly disproportionate to his crime, we need not address the second and third criteria set out in ***Solem***. *See **McGruder v. Puckett***, 954 F.2d 313, 316 (5th Cir.1992); *see also **Robertson v. State***, 245 S.W.3d 545, 549 (Tex. App.–Tyler 2007, pet. ref'd).

In determining whether Appellant's sentence is grossly disproportionate, we are guided by the holding in ***Rummel v. Estelle***, 445 U.S. 263, 100 S. Ct. 1133, 63 L.Ed.2d 382 (1980). After considering the facts of the instant case in light of ***Rummel***, we conclude that Appellant's sentence was not unconstitutionally disproportionate. *See **id.***, 445 U.S. at 266, 100 S. Ct. at 1134-35 (holding that life sentence is not cruel and unusual punishment for obtaining $120.75 by false pretenses where appellant had a prior felony conviction for fraudulent use of credit card to obtain $80.00 worth of goods or services and another for passing a forged check in amount of $28.36). Absent a threshold showing of disproportionality, we need not address the second and third ***Solem*** criteria. Therefore, we cannot conclude that Appellant's sentence constituted cruel and unusual

14

punishment.

Appellant's fifth issue is overruled.

## DISPOSITION

We *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered January 29, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)