

## NUMBER 13-20-00186-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

ELIGIO ALFONSO RAMIREZ,                                         Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 379th District Court
### of Bexar County, Texas.

## MEMORANDUM OPINION

### Before Justices Hinojosa, Tijerina, and Silva
### Memorandum Opinion by Justice Tijerina

Appellant Eligio Alfonso Ramirez seeks reversal of his conviction of continuous sexual abuse of a child under fourteen, indecency with a child by contact, and indecency with a child by exposure. *See* TEX. PENAL CODE ANN. §§ 21.02, 22.012. For the continuous sexual abuse of a child offense, Ramirez received a fifty-two-year sentence; for the indecency with a child by contact offense, he received a twelve-year sentence; and for

the indecency with a child by exposure offense, he received a sentence of ten years' confinement. The sentences will run concurrently. By four issues that we have reorganized and renumbered, Ramirez contends that: (1) the State made an improper jury argument constituting fundamental error; (2) the trial court erroneously allowed hearsay concerning what the complaining witness, I.C.,[1] said Ramirez did; (3) the trial court gave the jury an improper instruction in the charge concerning unanimity; and (4) his trial counsel was ineffective. We affirm.[2]

## I. THE STATE'S CLOSING ARGUMENT

By his first issue, Ramirez contends that the State made improper statements during closing argument constituting fundamental error. Specifically, Ramirez complains in his brief that the State said that "the only type of man that would exercise his Sixth Amendment right to trial in a case like this is 'the same type of man that would put his penis in a 12[-]year[-]old's mouth.'"[3]

To preserve a complaint that the State made improper jury argument, the defendant must have objected to the complained-of statement at trial and received an adverse ruling from the trial court. TEX. R. APP. P. 33.1(a)(1); *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) ("If [a defendant] fails to pursue his objection to

---

[1] We refer to the children that testified at Ramirez's trial by their initials to protect their identity. *See* TEX. R. APP. P. 9.8.

[2] This appeal was transferred from the Fourth Court of Appeals in San Antonio, Texas pursuant to a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] Specifically, the prosecutor stated the following: "Do you know what type of man wants a trial in this case? The same type of man that would put his penis in a 12-year-old's mouth. You think about that when you're back there and you think why he's here." The prosecutor did not mention the Sixth Amendment. Ramirez did not object.

an adverse ruling, he forfeits his right to complain on appeal about the argument." (citing

*Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)); *Archie v. State*, 221 S.W.3d

695, 699 (Tex. Crim. App. 2007) ("To preserve error[,] . . . a defendant must pursue to an

adverse ruling his objections to jury argument."); *Threadgill v. State*, 146 S.W.3d 654, 667

(Tex. Crim. App. 2004) (en banc) ("Appellant did not object to the prosecutor's argument

and therefore failed to preserve error."). In *Grado v. State*, the Texas Court of Criminal

Appeals explained it had previously found that certain rights are forfeitable.[4] 445 S.W.3d

736, 741 (Tex. Crim. App. 2014) (citing *Cockrell*, 933 S.W.2d at 89). The Court stated

that those forfeitable rights "by and large, have been evidentiary or procedurally based."

The Court said, "In those instances, we have found that in order to enforce certain

evidentiary or procedural rules it makes sense to require either an affirmative request that

they apply or, when a judge has held that they do not, an objection as a prerequisite to

appeal the lower court's action." *Id.* In *Cockrell*, the Court held that freedom from improper

jury argument is a forfeitable right. 933 S.W.2d at 89.

Ramirez acknowledges that he did not object to the complained-of argument in the

trial court. Nonetheless, without citation to any legal authority, he argues that the error

was fundamental; therefore, he was not required to object. *See* TEX. R. APP. P. 38.1(i).

---

[4] The *Grado* court distinguished the defendant's right to be "sentenced by a sentencing judge who properly considers the entire range of punishment" which is a waivable right from the right to appeal from unobjected-to improper jury argument, which the Court recognized as a forfeitable right. *Grado v. State*, 445 S.W.3d 736, 741 n.29 (Tex. Crim. App. 2014) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)). In particular, the *Grado* court clarified that a forfeitable right requires an objection to preserve the issue for appeal, while a waivable right requires for the defendant to specify that he has chosen not to invoke that right. *Id.* at 741; *see Cockrell*, 933 S.W.2d at 89 ("[W]e hold a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal.").

3

However, given that the court of criminal appeals has determined that a defendant's failure to object to improper jury argument forfeits his right to complain on appeal, we are not persuaded by Ramirez's argument. *See Cockrell*, 933 S.W.2d at 89. We overrule Ramirez's first issue.

## II.    HEARSAY

By his second issue, Ramirez contends that the trial court allowed hearsay. Specifically, Ramirez complains that Edgardo Casiano, a detective with the San Antonio Police Department, testified about what I.C. told her grandmother (Grandmother) concerning what Ramirez did to her.[5] The State responds that the testimony was not hearsay and was admissible pursuant to the excited utterance exception. The State argues in the alternative that even if the trial court committed error, it was harmless.

### A.    Standard of Review and Applicable Law

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

---

[5] Ramirez was married to Grandmother at the time that I.C. made an outcry of sexual abuse and the record reflects that I.C. referred to Ramirez as "Grandpa."

"Hearsay is a statement, other than the one made by the declarant while testifying at trial [or hearing], offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d); *Head v. State*, 4 S.W.3d 258, 260–61 (Tex. Crim. App. 1999). A "statement" is "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by [the person] as a substitute for verbal expression." *Id.* R. 801(a). However, "where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Head*, 4 S.W.3d at 264 (Womack, J. concurring).

> The erroneous admission of hearsay is non-constitutional error. TEX. R. APP. P. 44.2(a); *Fischer v. State*, 207 S.W.3d 846, 860 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008). As the reviewing court, we disregard a non-constitutional error that does not affect a criminal defendant's substantial rights. [*See*] TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 4. We deem the error harmless if, after examining the record as a whole, we find reasonable assurance that the error did not influence the jury's verdict or had but a slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). A trial court's improper admission of evidence is not reversible error if the trial court admits the same or similar evidence without objection at another point in the trial. *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

*Sanchez v. State*, 595 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Moreover, error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004).

5

**B.     Pertinent Facts**

At trial, the State asked Detective Casiano what Grandmother told him. Ramirez objected on the basis that the State sought hearsay. In response, the State argued that Grandmother's statements to Detective Casiano were admissible pursuant to the excited utterance exception to the hearsay rule.[6] *See* TEX. R. EVID. 803(2) (excited utterance). The State relied on Detective Casiano's testimony that when Grandmother made the statements, she was hysterical and in a state of shock. Ramirez argued that the statements did not qualify as excited utterances because too much time had passed between I.C.'s outcry to Grandmother and Grandmother's statements to Detective Casiano. The State countered that "[t]ime is not dispositive."

Ramirez conducted a voir dire examination of Detective Casiano, and the State asked several questions. Detective Casiano stated that Grandmother "seemed distraught" and "in shock" due to "[h]er granddaughter being sexually assaulted by [Ramirez]." Detective Casiano testified that he believed that Grandmother was still upset based on the following:

> It seemed like it was still fresh in her mind, like it just happened. She was emotional, which I understand that that point was made, but other than the level of emotion and the things that she spoke to me about in her statement were not of a typical person's behavior who was . . . in a calm state or in a mindset where they're over what happened, I guess.

The trial court overruled Ramirez's objection, and Detective Casiano repeated

---

[6] Grandmother did not testify as the State's outcry witness. *See Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011) (explaining that a child's first allegation of sexual abuse in some discernible manner beyond general insinuations that sexual abuse occurred to an adult is commonly known as the "outcry," and the adult who testifies about the outcry is commonly known as the "outcry witness"). Instead, the defense called her to testify.

what Grandmother told him. Specifically, Detective Casiano stated that Grandmother said that after Ramirez went to work in the morning, "[I.C.] came to her . . . and mentioned [that] Grandpa [Ramirez] has a lot of knives," and shortly thereafter, I.C. "said that [on the previous night] . . . Grandpa stuck his dick in my mouth." According to Detective Casiano, I.C. informed Grandmother that "this has been . . . ongoing for quite some time." Detective Casiano testified that I.C. told Grandmother that Ramirez had "touched" her "on" her chest "and pointed down towards her private parts," indicating that Ramirez had also touched her genitals. Detective Casiano said that Grandmother "mention[ed]" that I.C. said "there was something warm that was in her mouth[,] that was coming out of her mouth."

I.C., fourteen years old at the time of the trial, testified that she was appearing in court "because [she] was the victim of something that happened to [her] for years." The State asked I.C. if her "[G]randpa," Ramirez had "touched" her for years, and I.C. replied, "Yes." I.C. testified that Grandmother was the first person she told about Ramirez touching her.

The State asked I.C. to convey what occurred the day before she revealed the abuse. I.C. stated that Grandmother provided pajamas so that she could spend the night. I.C. testified that she did not remember too much of what occurred that evening, but she recalled watching a movie called "Life" with only Ramirez in the living room. According to I.C., Ramirez "started touching" her chest under her clothes. I.C. testified that Ramirez also touched her "vagina area." I.C. said that Ramirez put his penis in her mouth and "was thrusting into [her] mouth" while groaning. I.C. stated that Ramirez stopped what he was doing when he ejaculated on her chest and face.

7

I.C. testified that the next morning, she asked Grandmother to sit with her and told her what Ramirez had done the previous night. Grandmother then called I.C.'s parents, and they arrived at the home. Later, the police arrived.

The State asked, "Had he done this to you before?" I.C. responded, "No, not this far." However, I.C. replied, "Yes" to the State's question, "Had he touched you before?" I.C. did not recall when Ramirez first started touching her, but she thought it started "when [she] was pretty young." I.C. stated that the touching began approximately six years prior to this incident, and she was about twelve years old when this incident occurred. I.C. said, "One event I do remember is when I was supposed to be asleep but I was on the tablet because I took it with me, and he came into my room and he started touching me from my chest, and that's all I can remember." I.C. stated that Ramirez touched her on other occasions. I.C. testified that the abuse usually occurred when she watched movies with Ramirez, and "he would touch [her] on [her] chest mostly and his hands would roam around, but just mostly on [her] chest." I.C. clarified that Ramirez's hand roamed to her "stomach area and it would sometimes peek around [her] underwear, but it would never really go into there much." I.C. testified that Ramirez had previously touched her vaginal area. I.C. stated that on another occasion, Ramirez grabbed her waist and "humped" her body while they were in the pool.

Julie Vereen, the sexual assault nurse examiner, testified that she conducted a sexual assault exam on I.C. Vereen stated that I.C. told her that Ramirez had recently sexually assaulted her by putting his penis in her mouth and that he "made" her "stroke it." I.C. told Vereen that Ramirez "had sucked on her breast that evening." Vereen testified

8

that I.C. said that Ramirez ejaculated on her. Vereen said that I.C. reported that Ramirez had touched her on previous occasions.

## C.    Discussion

Having examined the record as a whole, for reasons explained below, we have a fair assurance that, even if the complained-of evidence was improperly admitted, that error, if any, did not influence the jury, or had but a slight effect. *See Motilla*, 78 S.W.3d at 355 (explaining that when evidence is improperly admitted, if after examining the record as a whole the appellate court has a fair assurance that the error did not influence the jury, or had but a slight effect, reversal is inappropriate); *see also Clay v. State*, 240 S.W.3d 895, 905–06 (Tex. Crim. App. 2007) (providing that "erroneously admitted evidence established little, if anything, negative about appellant that was not also well established by the properly admitted evidence"; therefore, it was not harmful).

The testimony of a child alone is enough to support a conviction. TEX. CODE CRIM. PROC. art. 38.07(a) (providing that a conviction for sexual assault is supportable on the uncorroborated testimony of the victim of the sexual offense); *IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.); *see also Nino v. State*, No. 13-18-00641-CR, 2020 WL 1887768, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 16, 2020, no pet.) (mem. op., not designated for publication) ("If believed, the victim's testimony alone is sufficient to support a guilty verdict."). Thus, I.C.'s testimony about the abuse is sufficient to support the jury's finding Ramirez guilty of the offenses. *See* TEX. CODE CRIM. PROC.

9

art. 38.07(a); *IslasMartinez*, 452 S.W.3d at 880; *Connell*, 233 S.W.3d at 466.

Moreover, the complained-of evidence provided by Detective Casiano was admitted without objection through I.C.'s testimony. Specifically, Detective Casiano said that I.C. told Grandmother that Ramirez "stuck his dick in [her] mouth," "this [abuse had] been . . . ongoing for quite some time," Ramirez had "touched" her "on" her chest, I.C. "pointed down towards her private parts," and "there was something warm that was in her mouth that was coming out of her mouth." While testifying, I.C. repeated these allegations and provided more details of the offenses. In addition, Vereen also repeated I.C.'s allegations, which were also recorded in I.C.'s medical report admitted at trial.[7]

---

[7] Specifically, Vereen documented I.C.'s allegations as follows:

Please tell me what happened[.] The patient, [I.C.], stated, ["]Because grandpa's dick went into my mouth[."] Do you have another name for 'dick'? [sic] "No but it was right here on him (points to genital area)" When did this happen? "Last night around 11 or 12 maybe" How many times did that happen? "This was the first time he did it that far[.] The other times it was [j]ust touching[.]" Did anything come out of his 'dick'? ["]Yeah[.]" Did you see it? "No I Just felt it[.]" Did it go anywhere else? "He got a towel so he could wipe off what was on me[.]" ["]Where was it on you?" (Patient points to right external cheek area)[.] Did anything else happen last night? "Just that[.]" Did anyone see this happen? ["]No everyone was asleep[.]" What is his name? "I think it's Eli[."] "Do you know how old he is?["] "No" Do you live with him? "No[.]" Was anything on his dick when this happened to you? "No[.]" Did he make you do anything to his body? "He made me stroke it last night[.] He made me stroke his dick with my hand [sic]. This was before he made it go in my mouth[.]" Did anything get on your hand? "No[.]" You said 'the other times it was [j]ust touching' can you tell me about that? "He would touch my breast and other times he would lift up my shirt and suck on my breasts and other times his hand would rub my clit[."] Can you point where your clit would be? "Here["] (points to genital area)[.] Did anything hurt or bleed when that happened? "No[.]" When this happened, was this on the inside of your clothes, or the outside or both? "Both[.]" When was the last time this happened to you? "Last night[.]" Was this on the inside of your clothes, outside or both last night? "Both[.]" What did he 'rub' you with? "His hand[.]" Was this on the outside where the skin [is] or on the inside where you pee from? "Uhm a little bit a both I guess[.]" Did anything hurt or bleed when that happened last night? "No[.]" You mentioned that he would suck on your breasts, can you tell me the last time that happened? "Last night when we were watching a movie[.]" Has anything else ever happened to your body? "No[.]" When did this first start? "Probably when I was around 7 or 8[.]" Can you tell me what he would do then? "Just touch my breast[.]" Are you concerned you may be pregnant? "No[.]" Can you tell me how someone would become pregnant? "Well I know if something comes from a man's dick and goes into a woman's vagina, pregnancy can happen that way[.] It's the birds and the bees talk[.]" Did that happen or do I need to test you for pregnancy? "No[.]" Do you know if he ever had any naked

10

Therefore, we conclude that because the complained-of evidence was admitted at trial elsewhere, without objection, error, if any, was cured. *See Lane*, 151 S.W.3d at 193 (stating that error in the admission of evidence is cured where the same evidence comes in elsewhere without objection); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (concluding the admission of the same evidence without objection rendered the improperly admitted evidence harmless); *Reckart v. State*, 323 S.W.3d 588, 596 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Moore v. State*, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999) ("The admission of the same evidence from another source, without objection, waives previously stated objections."))). We overrule Ramirez's second issue.

### III.  CHARGE ERROR

By his third issue, Ramirez contends that there was error in the jury charge warranting reversal. Specifically, Ramirez argues that the jury charge erroneously instructed the jury that it did not have to unanimously find that he committed the underlying specific acts because the evidence shows that three of the alleged acts occurred on the same day thus requiring for all jurors to agree that the fourth alleged act occurred to convict him of continuous sexual abuse of a child.

---

photos or videos of you? "Not that I remember[.]" Is there anything else I should know? "No[.]"

## A.    Applicable Law

A person commits the offense of continuous sexual abuse of a child if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and "the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b)(2); *Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd). Section 21.02 lists predicate offenses which constitute "act[s] of sexual abuse" to include the offenses of indecency with a child, TEX. PENAL CODE ANN. § 21.11(a)(1), and aggravated sexual assault, *id*. § 22.021.

Moreover, § 21.02 creates a single element, a "series" of sexual abuse acts, and it does not make each act a separate offense. *Id.* § 21.02; *Reckart*, 323 S.W.3d at 601 ("Section 21.02 allows the State to seek a single conviction for a 'series' of acts of sexual abuse with evidence that, during the relevant time period, the accused committed two or more different acts that section 21.02 defines as means of committing a single criminal offense and not as two or more separate criminal offenses."). "Thus, each act of sexual abuse is not an 'element' of the offense; rather, the 'series' is the element of the offense, and the acts of sexual abuse are merely the manner and means of committing an element of the offense." *Reckart*, 323 S.W.3d at 601 (citations omitted). The statute requires only unanimity that the defendant, during a period of thirty or more days, committed two or more acts of sexual abuse. *Id.*; *see* TEX. PENAL CODE ANN. § 21.02.

The Texas Court of Criminal Appeals explained that

the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence,

12

so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration.

*Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014) (citing TEX. PENAL CODE ANN. § 21.02). Moreover, we assume that the jurors read and understood the charge as a whole. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996).

## B.     Discussion

The jury charge included an instruction on unanimity consistent with § 21.02(d). Specifically, the jury charge stated:

> In order to find the defendant guilty of the offense of continuous sexual abuse of young children, as charged in Count 1 of the indictment, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. However, in order to find the defendant guilty in Count 1 of the offense of continuous sexual abuse of young children, you must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Under the court's application paragraph for the continuous sexual abuse offense, there were four separate predicate acts of sexual abuse alleged by the State:

> 1) [Ramirez] did intentionally or knowingly cause the mouth of [I.C.], a child who was younger than [fourteen (14)] years, to contact the sexual organ of [Ramirez];
>
> 2) [Ramirez] did intentionally or knowingly cause the penetration of the sexual organ of [I.C.], a child who was younger than [fourteen (14)] years, by [Ramirez's] finger;
>
> 3) [Ramirez] did intentionally or knowingly engage in sexual contact with [I.C.], a female child younger than fourteen (14) years by touching part of the genitals of [I.C.] with the intent to arouse or gratify the sexual desire of any person;
>
> 4) [Ramirez] did intentionally or knowingly engage in sexual contact with [E.A.], a female child younger than fourteen (14) years by touching part

13

of the genitals of [E.A.][8] with the intent to arouse or gratify the sexual desire of any person.

According to Ramirez, predicate act four is the only act which did not occur on the night of August 18, 2018, the night that I.C. testified he put his penis in her mouth; therefore, the trial court improperly instructed the jury that it did not have to be unanimous as to that predicate act to convict him. The State argues otherwise.

Even assuming that Ramirez is correct, the jury was properly instructed that it could convict Ramirez for continuous sexual abuse only if it unanimously found that he committed two predicate acts during a period that was thirty or more days in duration. *See Price*, 434 S.W.3d at 605–06. Therefore, taken as a whole, the jury charge properly instructed the jury that it could not convict Ramirez unless he committed the predicate acts within the proper time period. *See id.* Accordingly, even assuming without deciding, that Ramirez is correct that predicate acts one through three all occurred on August 18, 2018, based on the verdict, the jury must have necessarily unanimously agreed that predicate act four occurred as the jury is free to determine that the acts of sexual abuse were committed against one or more victims. *See* TEX. PENAL CODE ANN. § 21.02(b)(1); *Casanova v. State*, 383 S.W.3d 530, 543 (Tex. Crim. App. 2012) (acknowledging that the usual presumption is that jurors follow the trial court's explicit instructions to the letter). If not, Ramirez would have been acquitted because the jurors would have found that the series of acts had not occurred during a period that is thirty or more days in duration. *See*

---

[8] Although not discussed previously, the State presented evidence that Ramirez sexually abused another child, E.A. E.A., who was in high school and approximately sixteen years old at the time of trial, testified that when she was eight years old, Ramirez touched her vagina under her clothes while moving his hands.

14

*id.*; *see also Hutch*, 922 S.W.2d at 172.

Moreover, I.C. testified that she was in court because of "something that happened to [her] *for years*," (emphasis added), and she replied, "Yes" when the State asked if Ramirez had touched her for years. Grandmother told Detective Casiano that I.C. said Ramirez put his penis in her mouth, touched her chest and vagina, and that "this has been . . . ongoing for some time." I.C. stated that Ramirez touched her chest and vagina but clarified that on August 18, 2018, Ramirez went further than previous incidents by sticking his penis in her mouth. I.C. could not specifically remember when Ramirez began "touching" her, but she believed it started when she was very young. I.C. approximated that she was six years old when the touching began. I.C. testified that Ramirez usually sexually abused her while they were watching movies together, and he would touch her chest and vagina. I.C. stated that Ramirez's hand would stroke her stomach and "peek" around her underwear. I.C. specifically recalled a prior incident when Ramirez came into her room and touched her chest. As documented by Vereen in her medical report, I.C. stated that the August 18, 2018 incident was not the first time that Ramirez "touched" her. Specifically, I.C. told Vereen that Ramirez had previously touched her breast, "suck[ed]" on her breast, "and other times his hand would rub [her] clit." I.C. told Vereen that Ramirez began touching her breasts when she was seven or eight. Vereen's report documents that I.C. said that Ramirez had previously touched her vagina under and over her clothes.

Thus, the evidence supported a finding that Ramirez committed the four predicate acts including aggravated sexual assault by penetrating I.C.'s sexual organ with his finger and indecency with a child by contact by touching any part of I.C.'s genitals on different

15

dates during a period that is thirty or more days in duration. *See Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015) (noting that the "'female sexual organ' means the entire female genitalia, including both vagina and the vulva. Vulva is defined as the external parts of the female sexual organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance to the vagina"). Accordingly, we conclude that there is no error in the jury charge on this basis. We overrule Ramirez's third issue.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, Ramirez contends that his trial counsel was ineffective because of the following: (1) "failing to object to improper victim impact testimony"; (2) "failing to object to improper arguments in the guilt innocence phase by the prosecutor"; (3) "failing to request an instruction to disregard improper testimony elicited by the prosecutor of a Detective witness' personal experience of being sexually abused"; and (4) failing "to object that the prosecutor injected facts not in evidence in his closing argument at the guilt innocence stage of trial."

## A.    Standard of Review and Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two-part test articulated by the Supreme Court in *Strickland v. Washington. See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of

16

reasonableness. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. The appellant must also show that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694. In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (en banc) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be "firmly founded in the record," and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813–14); *Thompson*, 9 S.W.3d at 814 n.6 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an

appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (cleaned up).

## B.    Analysis

Here, the record is silent regarding trial counsel's reason for failing to perform the complained-of acts. Therefore, Ramirez has not overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance and that trial counsel's actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851; *see also Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (explaining that "the bare record does not reveal the nuances of trial strategy" and recognizing that concluding trial counsel was ineffective by failing to request a limiting instruction based on a silent record "would call for speculation and such speculation is beyond the purview" of an appellate court).

Moreover, Ramirez has failed to show how he was prejudiced by the actions of his trial counsel. First, Ramirez merely states in his brief that during the punishment stage of trial, I.C.'s mother improperly stated, "how would you punish [Ramirez] if it was your daughter," and trial counsel failed to object. However, he does not assert that there is a reasonable probability that, but for counsel's alleged error of failing to object, the result

18

would have been different. *See Thompson*, 9 S.W.3d at 812; *see also* TEX. R. APP. P. 38.1(i).

Next, Ramirez complains that he was irreparably harmed by his trial counsel's failure to object to the prosecutor's statement that the type of man who wanted a trial in a sexual abuse case is "the same type of man that would put his penis in a 12[-]year[-]old's mouth." "In determining whether an improper prosecutorial argument is harmless, we must calculate as much as possible the probable impact of the error on the jury in light of the entire record. *Campbell v. State*, 900 S.W.2d 763, 769 (Tex. App.—Waco 1995, no pet.).

> In conducting this harm analysis, we consider the nature and source of the error, the degree the prosecutor emphasized the erroneous jury argument, probable collateral implications, the weight a juror placed on the erroneous jury argument, and whether holding the improper jury argument harmless would encourage the state to repeat it. Additional factors that may be considered include the arguments of the parties, evidence in the record of the defendant's guilt, and whether the comment was made in bad faith.

*Id.*

Assuming error for purposes of this discussion, the error occurred during closing argument after the evidence had been presented. Thus, the prosecutor did not emphasize or repeat the complained-of jury argument. Furthermore, because I.C. and E.A. both testified in depth concerning what Ramirez did, it is unlikely that the jury placed any weight on the complained-of argument. *See id.* (considering the evidence in determining whether improper jury argument harmed the defendant). Finally, the trial court instructed the jury that during its deliberations it "must not consider, discuss, nor relate any matters not in evidence," that the jurors "should not consider nor mention any personal knowledge or

19

information [the jurors] may have about any fact or person connected with this case which is not shown by the evidence," that "[a]ll persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt," and "[t]he fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial."

"On appeal, we generally presume the jury follows the trial court's instructions in the manner presented. The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Accordingly, because no evidence to the contrary exists in this case, we must presume that the jurors did not consider, discuss, nor relate any matters not in evidence, including the complained-of statement, only considered what had been shown by the evidence, presumed that Ramirez was innocent, and convicted Ramirez of the offenses because each element of the offenses was proved beyond a reasonable doubt. Based on the entire record before us, we must conclude that the complained-of statement had no probable impact on the jury. *Campbell*, 900 S.W.2d at 769. Therefore, we cannot conclude that there is a reasonable probability that, but for counsel's alleged errors of failing to object to the complained-of argument, the result would have been different.[9] *Thompson*, 9

---

[9] Our conclusion that the prosecutor's comment does not establish the prejudice prong of an ineffective assistance of counsel claim should not be construed as a determination that the comment was appropriate. Jury arguments that suggest a defendant should be penalized for exercising his right to a jury trial are impermissible. *Carlock v. State*, 8 S.W.3d 717, 724 (Tex. App.–Waco 1999, pet. ref'd); *see Villarreal v. State*, 860 S.W.2d 647, 649 (Tex. App.—Waco 1993, no pet.) (holding that the trial court erred in denying a motion for mistrial based on the prosecutor's comment that "[t]his man . . . made a conscious decision to rape a ten-year-old child. But he didn't do it just once. He forced her to have to come into this courtroom in

S.W.3d at 812; *see Strickland*, 466 U.S. at 694; *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) ("Error in allowing improper argument is generally non-constitutional error that must be disregarded unless it affects the defendant's substantial rights.").

Finally, Ramirez argues that

> The prosecutor told the jury that they could convict Appellant if they believed that Appellant "touched [I.C.'s] vagina and he penetrated her two years before." There was never any evidence introduced that Appellant ever touched or penetrated [I.C.'s] vagina at any time before August 18, 2018, and in fact, there was affirmative evidence from [I.C.] and a SANE nurse that Appellant had not.

We disagree. As previously stated, there was evidence that Ramirez had touched I.C.'s genitals and penetrated I.C.'s sexual organ with his fingers prior to the August 18, 2018 incident. Therefore, we conclude that Ramirez has not met his burden of showing by a preponderance of the evidence that he was prejudiced by his trial counsel's alleged errors. Accordingly, we overrule Ramirez's fourth issue.

## V. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of February, 2022.

---

front of a bunch of strangers").